IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS V. SAKIEVICH<br>　　1959 East 1400 South<br>　　Spanish Fork, UT  84660,<br><br>　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>　　U.S. Attorney's Office<br>　　Civil Division<br>　　555 Fourth Street, N.W.<br>　　Washington, D.C.  20530,<br><br>　　Defendant. | CIVIL ACTION NO. _____ |

## COMPLAINT

Plaintiff Lieutenant Colonel Thomas V. Sakievich, United States Marine Corps (retired) ("LtCol Sakievich") alleges the following:

### PRELIMINARY STATEMENT

1. LtCol Sakievich challenges the decisions of the Department of the Navy's Board for Correction of Naval Records ("Board"), April 5, 2011, and February 20, 2013, under 10 U.S.C. § 1552. The Board's decision was arbitrary, capricious, unsupported by evidence, and otherwise contrary to law.

### PARTIES

2. LtCol Sakievich is retired from the United States Marine Corps.

3. The Defendant is the United States Marine Corps ("USMC"), a subsidiary component of the Department of the Navy. The Department of the Navy is a military department of the United

States Department of Defense ("DoD") under 10 U.S.C. § 101(a)(7). The DoD is an executive department of the United States under 5 U.S.C. § 101. Therefore, the Defendant is the United States.

## JURISDICTION

4. The Court has jurisdiction under 28 U.S.C. § 1331. The Act of Congress upon which federal question jurisdiction rests is the Administrative Procedure Act, 5 U.S.C. § 701 et seq.

5. In accordance with 28 U.S.C. § 2401(a), this action is brought within six years of the final finding of the Board.

6. Final opinions of the Board are sufficiently final for purposes of 10 U.S.C. § 1552.

7. LtCol Sakievich challenges the decision of the Board made pursuant to its authority under 10 U.S.C. § 1552. The Board's decision was arbitrary, capricious, unsupported by evidence and otherwise contrary to law.

## FACTUAL BACKGROUND

8. LtCol Sakievich enlisted in the USMC on April 17, 1975. He served four active duty years in the infantry, and obtained the rank of Sergeant/E-5.

9. From April 1979 through April 1981, LtCol Sakievich served in the USMC Reserve ("USMCR"), during which he was promoted to Staff Sergeant/E-6.

10. In October 1982, LtCol Sakievich entered the Marine Corps Officer Candidate School ("OCS").

11. Upon graduation from OCS in December 1982, LtCol Sakievich was commissioned on active duty as a Second Lieutenant/O-1 and given the Military Occupation Specialty ("MOS") of Infantry Officer. He was promoted to First Lieutenant/O-2 in December 1984.

12. In 1985, after serving in two company units, as a Battalion Operations Officer and a

Regimental Liaison Officer, LtCol Sakievich departed active duty, and subsequently accepted reserve duties in 1986.

13. Upon re-entering the USMCR, LtCol Sakievich was assigned as Executive Officer of an Engineer Support Company in Phoenix, Arizona, and received a new MOS of Combat Engineer Officer. Customarily, a Marine will receive formal training for each MOS he is designated to ensure competency and capability in the designated field. Contrary to his active duty counterparts, LtCol Sakievich learned through hands-on application and supervision in the building of roads, structures, and bridges, but he did not receive any formal training as a Combat Engineer.

14. In LtCol Sakievich's first observed Fitness Report while in the reserves, he received one "general value to the service" ("GVS") mark of "Excellent to Outstanding." [1]

15. In his subsequent two Fitness Reports, which covered June 14 to 28, 1986, and January 24 to February 7, 1987, he received the highest mark of "Outstanding" in GVS, with no one ranked ahead of him.

16. On March 1, 1987, LtCol Sakievich began a Full-Time Support ("FTS") tour under a two-year contract. [2] He was assigned to 4th Marine Division, Base Operations Section, and was given a new MOS: Communications Officer. Similarly, as occurred with the MOS

---

[1] A Fitness Report is an evaluation of the service member's performance and is used by various promotion and selection boards in the Marine Corps. An "Excellent to Outstanding" mark is standard for a new lieutenant in a new unit and new MOS, and is one mark below the highest GVS mark of "Outstanding."

[2] FTS was the Full-Time Support program within the USMCR that, after the first two-year contract, placed reservists on active duty orders in increments of up to 4 years. FTS was meant to manage the Marine Corps Reserve programs; it was institutionally accepted as a career program, although it was not originally designed as such. To be in line with the other Services, the Active Reserve (AR) program replaced FTS in 1995.

designation of Combat Engineer, LtCol Sakievich did not receive any formal training for this new MOS. His self-taught duties included telephone communications, capital property development, design and construction, disposition of Hazardous Material, OSHA compliance, and security of 196 real property sites, located in 46 states, which were owned and operated by his department within the United States.

17. In his first Fitness Report within this new billet and MOS, he was given a GVS mark of "Excellent to Outstanding."[3]

18. On January 1, 1988, LtCol Sakievich was promoted to Captain/0-3.

19. On June 3, 1988, LtCol Sakievich was approved for another FTS tour and was extended on orders until August 21, 1991.[4]

20. In his first Fitness Report as a Captain, which covered January 1 to June 22, 1988, LtCol Sakievich received the highest mark of "Outstanding". He was ranked 2 of 2, but against an active component peer with the same GVS. At that time, LtCol Sakievich was the only reserve (FTS) officer in the section. Thus, no other reserve (FTS) officer was ranked ahead of him.[5]

21. In LtCol Sakievich's second Fitness Report as a Captain, which covered June 23 to July 31, 1988, he received the highest GVS mark of "Outstanding" and was ranked "1 of 2," *ahead* of

---

[3] LtCol Sakievich's active component peer was similarly ranked "Excellent to Outstanding." LtCol Sakievich was also the only reserve FTS officer in this section; no one was ranked ahead of him.

[4] The approval of an additional tour on FTS with Fitness Reports that contain GVS markings of "Excellent to Outstanding" belies the Advisory Opinion that he was not competitive.

[5] Under the performance evaluation system of the time, reserve officers serving under FTS were ranked against active component peers. As such, a two-pool ranking system emerged wherein rank was assigned active officers first, then to reserve officers, almost without regard for merit.

his peer in the active component. Unfortunately, Headquarters Marine Corps ("HQMC") failed to process and file this Fitness Report into his Official Military Personnel File ("OMPF").[6]

22. In his next Fitness Report, which was with LtCol LaRose as his Reporting Senior and covered August 1, 1988 to January 31, 1989, he received his only "Excellent" GVS mark.[7] However, this report failed to conform to the performance evaluation requirements, as the narrative in Section C of the report lacked the required supporting material.

23. On August 15, 1990, HQMC notified LtCol Sakievich that he was missing a certified Fitness Report for the period of June 23 to July 31, 1988 (his highest rated Fitness Report yet). Nine days later, LtCol Sakievich resubmitted the report, certified, to HQMC for it to be filed in his OMPF.

24. For reasons unknown to him, this re-submitted, certified, Fitness Report was not reflected in the next release of his OMPF.

25. In his subsequent Fitness Reports, which covered July 20, 1990 to January 31, 1991, and February 1 to August 31, 1991, he received the highest GVS mark and was, once again, ranked "1 of 2," placing him *ahead* of his active component peer.

26. In October 1990, LtCol Sakievich's new Reporting Senior advised him to seek administrative relief from the unjust Fitness Reports given him by LtCol LaRose.

---

[6] Marine Corps Order ("MCO") P1610.7F places the burden on HQMC to properly file and maintain OMPF's, and to repair issues as reported by the individual Marines. The OMPF is a crucial record of service; if a Marine's record is inaccurate or incomplete, the individual cannot adequately be evaluated for increased levels of responsibilities, assignments, or duty.

[7] Each Fitness Report is written by two individuals: a Reporting Senior, which is usually the Marine's immediate supervisor within the administrative chain of command, and the Reviewing Officer, which is the Reporting Senior's immediate supervisor.

27. LtCol Sakievich's Reporting Senior referred him to the 4th Marine Division G-1 Department Head (responsible for administrative and personnel issues) for assistance in removing the unjustified fitness reports.

28. On January 14, 1991, LtCol Sakievich requested that the Board remove two Fitness Reports issued by LtCol LaRose on the grounds that they were erroneous and unjust. LtCol Sakievich would have requested that all three Fitness Reports authored by LtCol LaRose be removed, but he was improperly advised by his local Marine Corps officials at the time that the Fitness Report covering August 1, 1988 to January 31, 1989 was, despite being imbalanced and incomplete, not subject to removal as it was technically not an "adverse" report.

29. The Board properly referred LtCol Sakievich's request to the Performance Evaluation Review Board ("PERB").

30. LtCol Sakievich's petition to the PERB was made two months in advance of the next FTS Selection Board, in which LtCol Sakievich's next extension on active duty was to be decided.

31. LtCol Sakievich notified the PERB of the deadline on the first page of his petition.

32. On March 12, 1991, HQMC convened the FTS Selection Board.

33. At that time, LtCol Sakievich's OMPF still contained the two erroneous and unjust Fitness Reports written by LtCol LaRose that were ordered removed by the PERB, and did not contain his June 23 through July 31, 1988 Fitness Report, a key Fitness Report, wherein he was awarded a GVS score of "Outstanding".

34. On March 13, 1991, the day after HQMC convened its FTS Selection Board, the PERB ordered removal of the two erroneous and unjust Fitness Reports written by LtCol LaRose.

35. However, HQMC failed to correctly notify the FTS Selection Board of the changes to LtCol

Sakievich's record. In so doing, the FTS Board utilized an incorrect record, with both missing and negative Fitness Reports, when considering LtCol Sakievich for extension within the FTS program.

36. On April 1, 1991, the FTS Selection Board finished its evaluations. As a direct result of his incorrect OMPF, which contained two negative Fitness Reports and omitted a positive Fitness Report, LtCol Sakievich was not selected for extension on FTS.

37. LtCol Sakievich protested the incorrect findings of the FTS Selection Board; however, he was notified by Marine Corps seniors that he had no recourse. He was honorably released from active duty on August 31, 1991.

38. Based on the conditions of his protest, LtCol Sakievich subsequently received a DD 214 Form Addendum, dated November 13, 1991, which provided a separation code of LBK1, indicating that he was "involuntarily released" from active duty.

39. In January 1992, LtCol Sakievich accepted two-week orders to fulfill the needs of a Marine Corps University research project; he then accepted five and one half months of active service (March 1992 through September 1992) with one of his former duty stations: 4th Marine Division, Base Operations Section.

40. In late March 1992, LtCol Sakievich received his OMPF from HQMC and discovered numerous records were either missing or incorrect, including data on military education and missing awards on his master brief sheet.

41. In April 1992, LtCol Sakievich took multiple steps to correct the missing and incorrect items, to include four separate phone calls to HQMC.

42. On May 28, 1992, LtCol Sakievich re-applied for the FTS Program and included missing OMPF documents as a part of his application.

43. In support of his FTS application, LtCol Sakievich received numerous supporting recommendations for the program, including recommendations from his immediate supervisor, from the Commanding Officer, Headquarters Battalion, 4th Marine Division, and from the Commanding General, 4th Marine Division.

44. On August 6, 1992, the FTS Officer Selection Board announced that LtCol Sakievich had been selected as an alternate to the program.[8]

45. On September 12, 1992, LtCol Sakievich received a copy of his Career Retirement Credit Report ("CRCR").[9] The CRCR was devoid of any service from 1982 through 1992. Once again, LtCol Sakievich sought correction of his military records, this time to his CRCR. He appealed to the Director, Marine Corps Reserve Support Center, but received no response.

46. On September 13, 1992, he received another Fitness Report, covering April 1 through September 12, in which he received highest marks, with no one ranked ahead of him.

47. In September 1992, at the end of his contracted period of service, LtCol Sakievich was honorably released from active duty.

48. In 1993, LtCol Sakievich moved his family to Utah for civilian employment; his reserve service focused on completing distance military education at home, conducting on-site reserve duties with the 24th Marine Corps Regimental Headquarters, Kansas City, Missouri,

---

[8] His selection, which was approved *with* incorrect and derogatory information in his official record, belies the advisory opinion submitted to the Board which stated that he was not competitive.

[9] The CRCR is a vital document for a reservist's career, as it chronicles each satisfactory year completed on either active duty or in the reserves, and is counted towards time in service creditable for retirement. To have whole years missing from the CRCR is extremely detrimental to the Marine for purposes of selection for billets and assignments within the reserves, promotion, and retirement. To have ten full years of service omitted is both unique and professionally damaging.

and other opportunities to serve on short-term orders.

49. On September 1, 1994, LtCol Sakievich was promoted to Major/O-4, while on short-term orders to U.S. Joint Forces Command in support of its initial Haiti Operations.

50. On LtCol Sakievich's Fitness Report covering September 5 through September 29, 1994, his first as a Major, he received the highest mark of "Outstanding" in GVS, with no one ranked ahead of him. This was the same for his next two Fitness Reports, which covered November 27 through December 9, 1994, and January 8 through February 4, 1995.

51. In July 1995, LtCol Sakievich requested a copy of his OMPF.

52. Upon receipt, in August 1995, he discovered myriad missing records, to include: four Fitness Reports, two mandatory and critical Professional Military Education Diplomas (Amphibious Warfare School and Command and Staff College), and two Military Educational Certificates.

53. On November 10, 1995, in between civilian employment and reserve duties, LtCol Sakievich gathered and re-submitted the critical documents that were missing from his OMPF in August.

54. In December 1995, while on a three-week duty period to the 24th Marine Regiment, LtCol Sakievich made an onsite visit to the Marine Corps Reserve Support Command in Kansas City, Missouri, now Marine Individual Reserve Support Organization in New Orleans, Louisiana, to speak with the Administrative Director about the issues he has had with documents being lost and incorrect documents being submitted to FTS selection boards, and the resulting impact these issues have had on the board results. He inquired as to what could be done to fully remedy the situation. Though sympathetic to the problem, the only advice offered was for him to keep applying to the FTS, now AR, boards.

55. On December 18, 1995, upon completion of the short-term active service, LtCol Sakievich

received a Regimental Certificate of Commendation. He submitted an application to the AR program with the certificate as supporting documentation. Additionally, he received a separate enthusiastic recommendation for selection from his supervisor, the Commanding Officer, 24th Marine Regiment, 4th Marine Division.

56. On February 15, 1996, HQMC notified LtCol Sakievich that "[he did] not possess a grade and/or 'hard-skill' MOS match required by the AR program. In this case [he would] be considered for selection to the AR program against unrestricted officer MOS requirements in [his] current grade." In other words, he was to be considered as an alternative.

57. On February 26, 1996, LtCol Sakievich discovered that HQMC, without explanation, had reinserted the unjust Fitness Reports that had previously been ordered removed by the PERB back into his OMPF. Therefore, the once removed Fitness Reports had been erroneously considered by the February 15, 1996 AR accession board.

58. To correct HQMC's mishandling of his records, LtCol Sakievich made phone calls to key personnel within HQMC to coordinate the necessary efforts to repair significant damages to his OMPF. He then submitted the 1991 PERB documentation ordering removal to HQMC, and requested that it remove the erroneous and unjust Fitness Reports that had been previously ordered removed by the 1991 PERB. In his submission, LtCol Sakievich specified that he had a pending application for the AR program. He then requested immediate action of removal.

59. In March 1996, LtCol Sakievich was informed that he was not selected for the AR program.

60. From March 1996 to January 1998, LtCol Sakievich continued to serve in various operational reserve roles with the 24th Marine Regiment, during the weekends and two-week training periods.

61. In February 1998, he transferred to a reserve capacity on the U.S. Marine Corps Forces Atlantic staff and served, and exceled, in Operations, Operational Planning, and Manpower. Through various short-term and long-term reserve active duty orders, to include Presidential Reserve Recall orders, he was assigned to a supervisory desk in support of Continental U.S., Caribbean, South American, European, and North Central Asian operations.

62. On July 21, 1999, upon the insistence of supervisors and AR peers, LtCol Sakievich applied for the AR program.

63. On July 30, 1999, Lieutenant General ("LtGen") Peter Pace, Commander, U.S. Marine Forces Atlantic, "enthusiastically recommend[ed] approval" of LtCol Sakievich's request for active duty with the AR Program. LtCol, at the time Major, Sakievich was later informed that he was not selected for the AR program. The highest grade the AR program would allow were specific flight trained Majors.[10]

64. On August 1, 1999, LtCol Sakievich was promoted to the rank of LtCol/0-5.

65. In April 2000, based on renewed department head recommendations, LtGen Pace, Commander, U.S. Marine Forces Atlantic, the senior three-star general in the Marine Corps, requested waiver of rank and, "enthusiastically request[ed] approval" of LtCol Sakievich's request for active duty with the AR Program. In his letter of recommendation, LtGen Pace stated, "Having seen his abilities and demonstrated skills I desire that Lieutenant Colonel Sakievich be selected to the Active Reserve program and assigned to this command."

66. On July 26, 2000, LtGen Pace took extraordinary steps in sending additional correspondence to HQMC in order to personalize his initial recommendation.

---

[10] When the AR program replaced the FTS program, it became a deliberative career program and was limited up to Captains and specific flight trained Majors.

67. On August 9, 2000, HQMC convened FY00-4 AR Accession Board. During the board's review, LtCol Sakievich was called by HQMC (Reserve Affairs) and was warned that if he were to accept an assignment in the AR program, then he would essentially forfeit the opportunity to be promoted to the rank of Colonel in the AR.[11]

68. On August 21, 2000, LtCol Sakievich was notified of his AR selection.

69. On September 1, 2000, he accepted orders to active duty in the AR Program for two years.

70. On October 13, 2000, HQMC ordered LtCol Sakievich to active duty beginning November 1, 2000 for 36 months, with Expiration of Active Service on October 31, 2003.

71. On November 9, 2000, HQMC was unable to assess LtCol Sakievich into the AR as it was unable to locate his orders to duty.   LtCol Sakievich resolved the loss of his orders by faxing a copy to HQMC.

72. On May 23, 2002, LtCol Sakievich began coordinating through HQMC (Retirement Branch) the remainder of his career should he be unable to promote to Colonel because of the mishandling of his professional files. It was calculated that if he were to remain a LtCol, then he must retire no later than January 1, 2011. Despite a possible non-selection, LtCol Sakievich planned to serve two more four-year tours of active duty following the remainder of his current one.

73. In August 2002, LtCol Sakievich transferred from U.S. Marine Corps Forces, Atlantic, in Norfolk, Virginia, to U.S. Marine Corps Forces, Reserve-West, where he served as liaison to I Marine Expeditionary Force's ("I MEF") Operations, Personnel, and Logistical departments

---

[11] Individuals within the AR program go before promotion boards solely within the AR. Thus, for the AR Colonel promotion board, LtCol Sakievich would be compared to Marines who have likely had many more years within the AR program. When LtCol Sakievich heard this warning, he expressed frustration that but for HQMC's mishandling of his records, he would have been retained in the FTS/AR program and had a competitive career pattern for AR Colonel.

in support of large scope Wartime Operations.

74. In January 2003, LtCol Sakievich applied for career designation in the AR, which allowed him to no longer have to apply for continuation, but rather remain on one continuous uninterrupted order in the AR until retirement. On January 13, 2003, HQMC approved LtCol Sakievich's request for career designation in the AR Program.

75. In or about August 2003, LtCol Sakievich applied for promotion to Colonel. In or about October 2003, he learned that he had been passed over for promotion. He discussed this unwanted outcome with his supervisor and voiced his belief that it was due to: his fragmented career, late reassignment back to the AR (formerly FTS), HQMC's mishandling of his professional records, and his multiple forced moves from one promotion track to another.

76. In June 2004, LtCol Sakievich transferred from U.S. Marine Corps Forces, Reserve-West Liaison to I MEF G1 to oversee reserve personnel and manpower assignments in support of Operation Iraqi Freedom.

77. On August 11, 2004, LtCol Sakievich deployed to Iraq to oversee medical and manpower support of combat Marines.

78. In September 2004, while in Iraq, LtCol Sakievich applied a second time for promotion to Colonel.

79. In October 2004, he learned he was again passed over for promotion to Colonel.

80. On November 16, 2004, LtCol Sakievich returned to California to coordinate critical wartime manpower requirements.

81. In or about July and August 2005, LtCol Sakievich, along with seven others, was asked, via email from HQMC (Reserve Affairs), to retire. The request was made so as to open up

positions for promotable Majors/O-4s. He and the others were informed that if they did not voluntarily retire early, that HQMC had Secretary of the Navy authority to involuntarily retire them.

82. In or about October 2005, under constraint and against his intentions to remain on active duty to at least January 1, 2011 as a LtCol, LtCol Sakievich requested November 1, 2006 as his date of retirement.

83. From approximately October 2004 to May 2006, LtCol Sakievich chaired, and authored, a unique manpower reserve policy for I MEF, which was adaptable for use by the other MEFs and Marine Corps Component Commands. The MEF command signed it as official policy on May 26, 2006, six weeks before LtCol Sakievich departed the command for terminal leave prior to retirement.

84. On November 1, 2006, after being passed over twice for Colonel in the Active Reserves, LtCol Sakievich was forced to retire, instead of remaining on active duty through January 1, 2011.

85. On September 27, 2010, LtCol Sakievich, through his civilian employment in coordinating state government ethics dialogue with the Utah State Legislature, was advised to petition the Board for relief of well over seven lost years of active duty within the FTS/AR programs, due to the mishandling of his professional files by HQMC.

86. On November 15, 2010, LtCol Sakievich applied, pro se, to the Board for relief.

87. On February 11, 2011, HQMC (Reserve Affairs Division) issued an Advisory Opinion to the Board, recommending that relief "be denied."

88. HQMC opined that "SNO was not competitive to be assigned to the FTS program in 1991 nor the AR program in 1996." This opinion ignored the adverse impact that HCMQ's

repeated loss of professional records and the failure to timely remove negative Fitness Reports had on the FTS/AR accession boards and his career progression.

89. On March 15, 2011, LtCol Sakievich submitted a rebuttal to HQMC's opinion.

90. On April 5, 2011, the Board denied LtCol Sakievich relief, stating that "the evidence does not show you [sic] non-selection for the program was erroneous or unjust or that any fitness reports should be removed from your record."

91. On January 9, 2013, LtCol Sakievich requested reconsideration, and submitted 18 statements not previously considered by the Board, including statements from three General Officers, one of which is a former legal counsel to the Commandant of the Marine Corps and former Assistant Judge Advocate General of the Navy, thirteen Colonels, and one Master Gunnery Sergeant (E-9), as well as an in-depth analysis by Colonel Wendy Stafford, a retired USMC Judge Advocate. Each one of the statements was authored by seasoned Marines who, at one point or another in his career, served as a member on a selection board. Similarly, each one of the letters unequivocally stated that a Marine who is being reviewed by a selection board *will not* be selected if his OMPF is lacking necessary documents. As such, LtCol Sakievich's incomplete CRCR, in the years 1982 through 1992, and his OMPF, in the years 1990 through 1996, were inextricably linked to his removal from the FTS, and his non-selection to the AR. These converged to result in lost active duty time in the FTS and AR programs from September 1, 1991 to October 31, 2000; lost opportunities for increased levels of active duty experience during that time; his inequitable consideration for promotion to Colonel in the Active Reserves, and ultimately, lost active duty time from November 1, 2006 to January 1, 2011 as a Lieutenant Colonel, or to April 1, 2014 as a Colonel. Despite this compelling evidence, LtCol Sakievich's request for reconsideration upon submission of new evidence

was denied in February 2013.

## FIRST CAUSE OF ACTION

### The Board's Conclusions are Arbitrary, Capricious, and Unsupported by Evidence

92. LtCol Sakievich incorporates paragraphs 1 through 91 above herein.

93. The Board's decision to deny LtCol Sakievich's request for relief was arbitrary, capricious, and unsupported by evidence in the following manners: (1) it failed to utilize the selection standard employed by the respective selection boards, or at a minimum it failed to establish *any* selection standard; (2) in failing to utilize a selection standard, it failed to distinguish the fact that, despite Fitness Reports with rankings against active component individuals, applicants before the FTS and AR do not compete against the active component; and (3) it failed to provide a sampling of records by which to adequately compare LtCol Sakievich's record against.

94. Instead of conducting a thorough review, establishing a selection standard, and pulling other records by which to compare LtCol Sakievich's, the Board summarily, and arbitrarily, stated that he was "not competitive."

## SECOND CAUSE OF ACTION

### The Board's Decision is Based on Material Error

95. LtCol Sakievich incorporates paragraphs 1 through 91 above herein.

96. The Advisory Opinion from which the Board based its decision made several erroneous assertions:

   a. That LtCol Sakievich was not competitive because he was ranked "2 of 2" on 4 occasions. This is erroneous because it aggregates the rankings in two duplicate reports and does not take into consideration that LtCol Sakievich, as a Reservist, was ranked

against his active component peer, which was usually ranked first without merit.

b. That LtCol Sakievich's reports were devoid of laudatory and break-out comments, when in fact they were replete with such comments and phrases.

c. That LtCol Sakievich had three Fitness Reports with "Excellent to Outstanding" marks in the GVS section. LtCol Sakievich actually had two, and as previously annotated, they were received during periods in which he was serving in a new, untrained MOS.

97. The Advisory Opinion failed to take into account the following:

a. That the one marking of "Excellent" was authored by the same Reporting Senior that authored the two removed Fitness Reports.

b. That LtCol Sakievich was ranked against his active component peers.

c. That despite being ranked against his active component peers, he was ahead on numerous occasions.

d. That even though LtCol Sakievich is ranked against his active component peers for purposes of drafting Fitness Reports, he *did not* compete with them in FTS and AR selection boards.

### THIRD CAUSE OF ACTION

### HQMC was Derelict in its Duty to Maintain Accurate Records

98. LtCol Sakievich incorporates paragraphs 1 through 91 above herein.

99. Had HQMC fulfilled its duty, pursuant to MCO P1610.7F, in ensuring that LtCol Sakievich's record was complete and accurate, LtCol Sakievich would have been highly competitive in both the FTS and AR programs. Selection would have resulted in the additional active duty time from 1 September 1991 through 31 October 2000.

100. With that time in grade on active duty in the AR, LtCol Sakievich would have been competitive for promotion to Colonel.

101. As a Colonel, he would have been able to stay in the Marine Corps with 30 active commissioned years of service, or until April 1, 2014.

## RELIEF

Wherefore, LtCol Sakievich requests that the decision of the Board be set aside, that the case be remanded to the Board, and that the following relief be directed:

1. That LtCol Sakievich's record is amended to show that he was in the FTS and AR program from 1 September 1991 through 31 October 2000.

2. That he is promoted to Colonel, backdated to July 2004, the date he was first eligible for promotion.

3. That his record is amended to reflect that he remained on active duty until April 1, 2014, his mandatory retirement date as a Colonel.

4. That his recomputed 34-years of active service include his active duty enlisted service from April 17, 1975 to April 16, 1979.

5. That LtCol Sakievich is awarded the costs and reasonable attorney's fees incurred in bringing this action, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (2000).

6. Such other relief as may be deemed necessary or appropriate in order to accord full and complete relief.

Respectfully submitted,

*[signature]*

_____
Eric S. Montalvo, DC Bar No. 993206
THE FEDERAL PRACTICE GROUP
1150 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
Telephone: 202-862-4360
Facsimile: 888-899-6053
emontalvo@fedpractice.com

Attorney for Plaintiff

Dated: 9/30/2014

## VERIFICATION

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

_____  
Thomas V. Sakievich

_SEPTEMBER 5, 2014_  
Date