## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS V. SAKIEVICH, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 14-1671 (ABJ) |
| UNITED STATES OF AMERICA, ) | |
| Defendant. ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Lieutenant Colonel Thomas V. Sakievich has brought this action against the United States, seeking to set aside certain decisions of the Department of the Navy's Board for the Correction of Naval Records ("BCNR") as arbitrary, capricious, unsupported by evidence, and contrary to law, pursuant to 10 U.S.C. § 1552 and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.* Compl. [Dkt. # 1]. He asks the Court to order the BCNR to amend his military record in several respects and to direct the BCNR to promote him to Colonel, backdated to July 2004. Compl., Relief, at 18. Defendant has moved to dismiss plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that plaintiff's requests for relief are not justiciable and that plaintiff has failed to exhaust his administrative remedies. Def.'s Mot. to Dismiss [Dkt. # 9] ("Def.'s Mot"); Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 9] ("Def.'s Mem."). The Court agrees that it can only review the reasonableness of the BCNR's decisions, and cannot award plaintiff the corrective relief he seeks. It also finds that plaintiff has failed to exhaust his administrative remedies as required by 10 U.S.C. § 1558(f). For those reasons, defendant's motion to dismiss will be granted.

## BACKGROUND

Plaintiff is a retired United States Marine Corps Lieutenant Colonel with a long history of military service, and his complaint contains a number of challenges to decisions made by the Marine Corps with regard to his military record and his terms of service. Compl. ¶¶ 2, 8–91. The Court will set forth only that portion of the factual background and procedural history that is relevant to resolving defendant's motion to dismiss.

Plaintiff enlisted in the Marine Corps on April 17, 1975 and served four active duty years in the infantry, obtaining the rank of Sergeant. Compl. ¶ 8. From April 1979 through April 1981, plaintiff served in the Marine Corps Reserve. *Id.* ¶ 9. In December 1982, he graduated from the Marine Corps Officer Candidate School and was commissioned on active duty as a Second Lieutenant. *Id.* ¶ 10–11. He received several promotions and positive Fitness Reports over this period. *Id.* ¶¶ 9, 11, 14–15. Plaintiff left active duty and accepted reserve duties in 1986. *Id.* ¶ 12.

On March 1, 1987, plaintiff began a two-year tour in the Full-Time Support ("FTS") program, a Marine Corps Reserve program which placed reservists on active duty orders for periods of up to four years. Compl. ¶ 16 & n.2. On June 3, 1988, plaintiff was approved for another FTS tour through August 21, 1991. *Id.* ¶ 19. He again received largely positive Fitness Reports throughout this period, and was promoted to Captain. *Id.* ¶¶ 17–18, 20–21, 25. However, plaintiff believed that some of the Fitness Reports were "erroneous and unjust," and on January 14, 1991, he asked the BCNR to remove two of the Fitness Reports from his record. *Id.* ¶¶ 26, 28. The BCNR referred this request to the Performance Evaluation Review Board ("PERB"). *Id.* ¶ 29.

While that referral was pending, plaintiff applied for another active duty tour in the FTS program, and the FTS Selection Board was convened on March 12, 1991. Compl. ¶¶ 30, 32. At that time, plaintiff's military record still contained the two reports plaintiff had petitioned to have

removed, and it was also missing a positive report that plaintiff had previously resubmitted to the Marine Corps. *Id.* ¶ 33. Despite the fact that the PERB found in plaintiff's favor and ordered the two reports removed from his record on March 13, 1991, the FTS Selection Board was not notified of those changes. *Id.* ¶¶ 34–35. On April 1, 1991, the FTS Selection Board denied plaintiff's application for an extension on FTS, and plaintiff attributes that result to the failure to correct his military record. *Id.* ¶ 36. Plaintiff states that he "protested the incorrect findings of the FTS Selection Board," but "was notified by Marine Corps seniors that he had no recourse," and he was honorably released from active duty on August 31, 1991. *Id.* ¶ 37.

In March 1992, plaintiff received a copy of his military record, and he "discovered [that] numerous records were either missing or incorrect." Compl. ¶ 40. He repeatedly contacted the Marine Corps Headquarters in an effort to correct his record, and on May 28, 1992, he reapplied for the FTS program and included the missing record documents as part of his application, along with "numerous supporting recommendations" from his superiors. *Id.* ¶ 41–43. On August 6, 1992, plaintiff was notified that he had been selected as an alternate for the FTS program. *Id.* ¶ 44.

In September 1992, at the end of his contracted period of service, plaintiff was honorably released from active duty. Compl. ¶ 47. In 1993, plaintiff obtained civilian employment and continued his reserve service. *Id.* ¶ 48. He continued to receive positive Fitness Reports and in September 1994, he was promoted to Major. *Id.* ¶¶ 46, 49–50. Between July 1995 and December 1995, plaintiff again requested a copy of his military record and undertook significant efforts to locate and provide records that were missing from his file. *Id.* ¶¶ 51–54. He also contacted Marine Corps officials to voice his concerns that the records that were submitted to the FTS Selection Boards in 1991 and 1992 were incomplete and that the omissions affected his applications. *Id.* ¶ 54. He was told to keep applying to the FTS Selection Boards. *Id.*

3

On December 18, 1995, plaintiff applied to the Active Reserve ("AR") program, which had replaced the FTS program that year.  Compl. ¶¶ 16 n.2, 55.  On February 15, 1996, he was notified that he was not "a grade and/or 'hard-skill' MOS [Military Occupational Specialty] match" for the AR program, and would be considered "as an alternative."  *Id.* ¶ 56.  Shortly thereafter, plaintiff discovered that the two Fitness Reports that had been ordered removed by the PERB in March 1991 were included in his file and had been considered by the AR Accession Board.  *Id.* ¶ 57.  Plaintiff attempted to correct this error, but in March 1996, he was informed that he was not selected for the AR program.  *Id.* ¶¶ 58–59.

Plaintiff continued his reserve service, and he reapplied for the AR program on July 21, 1999, but he was not selected because "[t]he highest grade the AR program would allow were specific flight trained Majors."  Compl. ¶¶ 60–63.  On August 1, 1999, plaintiff was promoted to Lieutenant Colonel, and in April 2000, a senior Marine Corps official specifically requested that the rank requirement be waived and that plaintiff be approved for active duty with the AR program. *Id.* ¶¶ 64–65.  On August 9, 2000, the next AR Accession Board convened, and plaintiff was selected for the AR program.  *Id.* ¶¶ 67–68.  However, he was informed that accepting the assignment "would essentially forfeit [his] opportunity to be promoted to the rank of Colonel in the AR," because he would be compared to Marines who had more years of experience in the program.  *Id.* ¶ 67 & n.11.  Plaintiff "expressed frustration that but for [Marine Corps Headquarters'] mishandling of his records, he would have been retained in the FTS/AR program and had a competitive career pattern for AR Colonel," but he nevertheless accepted the AR assignment in September 2000.  *Id.* ¶¶ 67 n.11, 69.

In January 2003, plaintiff applied for career designation in the AR program, meaning he would no longer need to reapply to the program, and his request was approved.  Compl. ¶ 74.  In

August 2003, plaintiff applied for promotion to Colonel, but in October 2003, he learned that he did not receive the promotion. *Id.* ¶ 75. In his view, this was due to "his fragmented career, late reassignment back to the AR (formerly FTS), [the Marine Corps Headquarters'] mishandling of his professional records, and his multiple forced moves from one promotion track to another." *Id.* He reapplied for the promotion in September 2004, but was again rejected. *Id.* ¶¶ 78–79.

In July or August 2005, plaintiff was asked by Marine Corps Headquarters to retire voluntarily. Compl. ¶ 81. He was informed that if he declined to do so, he could be involuntarily retired. *Id.* Plaintiff states that he retired on November 1, 2006, "under constraint and against his intentions to remain on active duty to at least January 1, 2011." *Id.* ¶¶ 82, 84.

On September 27, 2010, plaintiff was advised as part of his civilian employment that he could petition the BCNR for relief of "over seven lost years of active duty with the FTS/AR program, due to the mishandling of his professional files," and on November 15, 2010, he petitioned the BCNR for relief. Compl. ¶¶ 85–86. The Marine Corps Headquarters Reserve Affairs Division issued an Advisory Opinion to the BCNR on February 11, 2011, recommending that plaintiff's request be denied on the grounds that he "was not competitive to be assigned to the FTS program in 1991 nor the AR program in 1996." *Id.* ¶¶ 87–88. Plaintiff submitted a rebuttal to that opinion on March 15, 2011, but on April 5, 2011, the BCNR denied his request for relief, stating that "the evidence does not show you[r] non-selection for the program was erroneous or unjust or that any fitness reports should be removed from your record." *Id.* ¶¶ 89–90.

In January 2013, plaintiff requested that the BCNR reconsider his request, and he submitted new evidence in support of his petition, including statements from several superior officers who had previously served as members of a selection board. Compl. ¶ 91. The BCNR denied his request for reconsideration in February 2013. *Id.*

Plaintiff initiated this action on October 7, 2014.  Compl.  He asserts that the BCNR's conclusions were arbitrary and capricious and unsupported by evidence, that its decision was based on material error, and that the Marine Corps Headquarters was derelict in its duty to maintain accurate records.  Compl. ¶¶ 92–101.

On March 31, 2015, defendant moved to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1), arguing that plaintiff's requests for relief are not justiciable and that he failed to exhaust his administrative remedies as required by 10 U.S.C. § 1558(f).  Def.'s Mot.; Def.'s Mem.  Plaintiff opposed the motion and filed a motion for summary judgment on May 1, 2015.  Pl.'s Opp. to Def.'s Mot. & Mot. for Summ. J. on Admin. R. [Dkt. # 12] ("Pl.'s Mot."); Mem. of P. & A. in Opp. to Def.'s Mot. & Pl.'s Mot. [Dkt. # 12-1] ("Pl.'s Mem.").  On June 10, 2015, defendant filed a reply in support of its motion to dismiss, Def.'s Reply in Supp. of Def.'s Mot. [Dkt. # 14] ("Def.'s Reply"), and it also filed a combined opposition to plaintiff's motion for summary judgment and cross-motion for summary judgment.  Def.'s Opp. to Pl.'s Mot. & Def.'s Mot. for Summ. J. [Dkt. # 16].  Both parties filed replies in support of their respective summary judgment motions.  Pl.'s Reply in Supp. of Pl.'s Mot. [Dkt. # 19] ("Pl.'s Reply"); Def.'s Reply in Supp. of Def.'s Mot. for Summ. J. [Dkt. # 21].

**STANDARD OF REVIEW**

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an

examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

## ANALYSIS

I.     **Plaintiff's requests for directed relief are not justiciable, because the Court cannot order the BCNR to amend his military service record or promote him to Colonel.**

Plaintiff believes that but for the presence of the two "erroneous and unjust" Fitness Reports in his military record, he would have been selected for the FTS program in 1991 and the entire history of his military service would have been different as a result:  he would have served more years on active duty, he would have been accepted for all subsequent FTS and AR programs, he would have received the promotion to Colonel in 2004 when he was first eligible, and he would not have retired until April 2014.  *See, e.g.*, Compl. ¶ 67 n.11 ("[B]ut for [the] mishandling of his records, [plaintiff] would have been retained in the FTS/AR program and had a competitive career pattern for AR Colonel.").  Plaintiff asks the Court to order the BCNR to amend his military record to reflect what he believes should have been his career path and to direct the BCNR to promote plaintiff to Colonel, retroactive to July 2004.  *Id.*, Relief, at 18.  Defendant has moved to dismiss plaintiff's claims on the grounds that the relief he seeks is beyond the scope of what this Court may award, rendering plaintiff's claims nonjusticiable.  Def.'s Mem. at 10–12.  To the extent that plaintiff asks the Court to do anything other than review the BCNR's decisions for reasonableness, the Court agrees.

"The justiciability of [a] case involving a claim to a military promotion and distinct claims for the correction of military records is limited by the fundamental and highly salutary principle that:  '[J]udges are not given the task of running the Army.'"  *Kreis v. Sec'y of the Air Force*, 866

7

F.2d 1508, 1511 (D.C. Cir. 1989), quoting *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953). Instead, as the D.C. Circuit has made clear, "[t]he Constitution vests '[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches." *Id.*, quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). While the decisions of the BCNR "are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence," *Chappell v. Wallace*, 462 U.S. 296, 303 (1983), a "request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions." *Kreis*, 866 F.2d at 1511.

In *Kreis*, the plaintiff, an Air Force Major, challenged the denial of his application for promotion to Lieutenant Colonel on the grounds that his record contained an inaccurate Officer Effectiveness Report that prejudiced his application. *Id.* at 1509–10. The plaintiff requested that the court retroactively order his promotion, or in the alternative, that it evaluate the reasonableness of the Secretary of the Air Force's decision not to correct the allegedly inaccurate portions of his service record. *Id.* at 1510–11. The D.C. Circuit affirmed the District Court's dismissal of the claim for retroactive promotion as nonjusticiable, finding that "the authority to determine whether the original selection boards erred in comparing appellant to the other candidates for promotion" was vested by Congress "in the Secretary alone." *Id.* at 1511. However, it determined that the district court did have jurisdiction "to evaluate, in light of familiar principles of administrative law, the reasonableness of the Secretary's decision not to take certain corrective action" with respect to the plaintiff's record. *Id.* at 1511, 1515.

Here, plaintiff asks the Court to order "[t]hat he is promoted to Colonel, backdated to July 2004, the date he was first eligible for promotion." Compl., Relief, at 18 ¶ 2. As in *Kreis*, "[i]nsofar as [plaintiff] seeks a retroactive promotion by judicial decree," the "dismissal of his case

8

as nonjusticiable" is warranted.  866 F.2d at 1511; *see also Saint-Fleur v. McHugh*, 83 F. Supp. 3d 149, 154 (D.D.C. 2015) ("[The plaintiff] does not, for instance, ask the court to order his retroactive promotion – relief that the court plainly could not grant."), citing *Kreis*, 866 F.2d at 1511; *Levant v. Roche*, 384 F. Supp. 2d 262, 267 (D.D.C. 2005) ("While plaintiff is obviously disappointed by defendants' decision not to promote him, this Court does not have jurisdiction to second-guess the Selection Board's decision and order a retroactive promotion by judicial decree.").

Plaintiff's other specific requests are similarly problematical.  In his complaint, he asks that the Court direct the BCNR to provide him with the following relief:

> 1.  That [plaintiff's] record is amended to show that he was in the FTS and AR program from 1 September 1991 through 31 October 2000.
>
> * * *
>
> 3.  That his record is amended to reflect that he remained on active duty until April 1, 2014, his mandatory retirement date as a Colonel.
>
> 4.  That his recomputed 34-years of active service include his active duty enlisted service from April 17, 1975 to April 16, 1979.
>
> * * *

Compl., Relief, at 18 ¶¶ 1, 3–4.

If this Court is "not competent to compare [plaintiff] with other officers competing for . . . a promotion," *see Kreis*, 866 F.2d at 1511, it follows that the Court may not interpose itself in the selection process for the FTS and AR programs, and therefore, it cannot order that plaintiff's records be amended to reflect his retroactive admission.  In other words, the Court cannot award plaintiff the relief he seeks without "second-guess[ing] the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the Nation."  *Id.*  This also means that the Court cannot grant plaintiff active duty status he did not have, or change his retirement

date to show that he served longer in a position that he did not hold than he actually did.  *See Remmie v. Mabus*, 846 F. Supp. 2d 91, 95 (D.D.C. 2012) (agreeing, in response to the plaintiff's requests that the court correct his military service record to reflect continuous enlistment and to reflect his promotion, that the court "cannot order reenlistment or retroactive promotion" and that such claims were nonjusticiable).  The Court therefore concludes that plaintiff's claims, insofar as he asks the Court to direct the BCNR to make substantive changes to his military record reflecting his acceptance into the FTS and AR programs, his promotion to Colonel, and his revised retirement date, are nonjusticiable, and defendant's motion to dismiss should be granted.[1]

Nevertheless, as the D.C. Circuit held in *Kreis*, certain limited requests for review of the BCNR's decisions are justiciable where they "require the district court merely to evaluate, in light of familiar principles of administrative law, the reasonableness of the Secretary's decision not to take certain corrective action with respect to [the plaintiff's] record."  866 F.2d at 1511; *see also, e.g.*, *Levant*, 384 F. Supp. 2d at 267 ("[T]his Court does have jurisdiction to evaluate the reasonableness of the AFBCMR's decision not to take corrective action, albeit under a deferential 'arbitrary and capricious' standard of review.").  "Adjudication of these claims requires the district

---

1    Plaintiff argues that the Court possesses subject matter jurisdiction over his claims and that defendant should have moved to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and not Rule 12(b)(1) for lack of subject matter jurisdiction. Pl.'s Mem. at 4.  But the D.C. Circuit has cast cases challenging the redressability of actions seeking the correction of military records and retroactive promotions as those arising under Rule 12(b)(1).  *See Kreis*, 866 F.2d at 1511 (observing that, while the defendant filed a Rule 12(b)(6) motion to dismiss for failure to state a claim, the defendant argued that the plaintiff's claims were "not justiciable and that the district court should therefore dismiss the case for lack of jurisdiction" "[i]n terms more appropriate to a Rule 12(b)(1) motion").  And in any event, the D.C. Circuit has made clear in a different context that "if the district court was correct in dismissing the action as . . . nonjusticiable . . . it is within our power to affirm despite the citation of the wrong rule." *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011).

court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." *Kreis*, 866 F.2d at 1511.

Bound as it is to construe the complaint liberally in ruling on a motion to dismiss, the Court observes that plaintiff's request for relief contains a kernel of a justiciable claim. In the preamble to his enumerated requests for directed relief, plaintiff "requests that the decision of the [BCNR] be set aside, [and] that the case be remanded to the [BCNR]," and he elsewhere requests that the Court direct "[s]uch other relief as may be deemed necessary or appropriate in order to accord [plaintiff] full and complete relief." Compl., Relief, at 18. Thus, while it appears that "all [plaintiff's] efforts are aimed ultimately at securing his promotion," to the extent that plaintiff is asking the Court to review the reasonableness of the BCNR's decisions under the APA's arbitrary and capricious standard, that aspect of plaintiff's claim is justiciable and survives defendant's first challenge for lack of subject matter jurisdiction. *See Kreis*, 866 F.2d at 1511, 1515.

## II.   Plaintiff has failed to exhaust his administrative remedies by obtaining "special board" review, as required by 10 U.S.C. § 1558(f).

The BCNR has ruled on a number of challenges to personnel decisions made by the Marine Corps throughout plaintiff's long history of military service. But at bottom, as plaintiff himself has stated, his "claims stem from the non-selection to the FTS in 1991." Pl.'s Reply at 5 n.4. Defendant alleges that plaintiff failed to exhaust his administrative remedies with regard to his 1991 rejection by the FTS Selection Board, because he has failed to establish that he sought review of that decision by a "special board" prior to initiating this action, as required by 10 U.S.C. § 1558(f). Def.'s Mem. at 12–17. Defendant also contends that plaintiff failed to seek review by a "special board" of any of the other instances in which his applications to the FTS and AR programs were rejected, and that he has failed to exhaust his administrative remedies with regard to those decisions, as well. *Id.*

11

10 U.S.C. § 1558(f)(1) provides:

> A person seeking to challenge an action or recommendation of a selection board,[2] or an action taken by the Secretary of the military department concerned on the report of a selection board, is not entitled to relief in any judicial proceeding unless the action or recommendation has first been considered by a special board under this section or the Secretary concerned has denied the convening of such a board for such consideration.

10 U.S.C. § 1558(f)(1).  In keeping with that statute, the District Court in *Byrum v. Winter*, 783 F. Supp. 2d 117 (D.D.C. 2011), stated:  "Thus, only after a special board has considered the plaintiff's claim or, in the alternative, the Secretary has denied the plaintiff consideration of his claim by a special board, can the court review the plaintiff's claim and provide appropriate relief." *Id.* at 123, citing 10 U.S.C. § 1558(f)(2)–(3); *see also Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) (recognizing "the well-established principle 'that a court should not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures'"), quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971).

A "special board" is defined as:

> [A] board that the Secretary of a military department convenes under any authority to consider whether to recommend a person for appointment, enlistment, reenlistment, assignment, promotion, retention, separation, retirement, or transfer to inactive status in a reserve component instead of referring the records of that person for consideration by a previously convened selection board which considered or should have considered that person.

10 U.S.C. § 1558(b)(1)(A).  A "special board" can include "a board for the correction of military records convened under section 1552 . . . if designated as a special board by the Secretary," but it

---

2        A "selection board," in relevant part, includes any board "[c]onvened by the Secretary of a military department under any authority to recommend persons for appointment, enlistment, reenlistment, assignment, promotion, or retention in the armed forces."  10 U.S.C. § 1558(b)(2)(A).  The term does not include "[a] board for the correction of military records convened under section 1552." *Id.* § 1558(b)(2)(B).

does not include "a promotion special selection board convened under section 628 or 14502." *Id.* § 1558(b)(1)(B)–(C). "[T]he statute indicates that at least one purpose of a special board is to review those decisions issued by a selection board, suggesting that the two are wholly separate bodies." *Byrum*, 783 F. Supp. 2d at 123, citing 10 U.S.C. § 1558(f)(1).

In *Byrum*, the plaintiff, a former Navy Chaplain, was "involuntarily retired" as a result of a recommendation by the Department of the Navy's Selective Early Retirement Board ("SERB"), and he challenged the SERB's decision before the BCNR. *Id.* at 118–20. The BCNR denied his request for relief, and he twice petitioned for reconsideration, which the BCNR twice denied. *Id.* at 120–21. The plaintiff then filed suit in this District, "requesting that the court set aside the BCNR's decision and order the defendant to reinstate him on active duty; correct his record to show that he was never retired . . . and cause him to be considered for promotion to Captain." *Id.* at 121 (internal quotation marks omitted). The plaintiff characterized his complaint as an action brought exclusively under the APA, and "explain[ed] that he is not seeking direct review of the SERB decision, but rather, review of the BCNR's decision to deny him relief." *Id.*

The defendant moved to dismiss on the grounds that the plaintiff had failed to request that a "special board" be convened to review the SERB decision as required by 10 U.S.C. § 1558(f)(1), and he contended that the plaintiff's "failure to exhaust his administrative remedies deprive[d] the court of jurisdiction over his claim." *Id.* at 122. The plaintiff did not dispute that he was required to exhaust the "special board" review requirement "as a precondition to a judicial challenge to a SERB decision," but he argued that he had satisfied this requirement "by obtaining the BCNR's review of the SERB's recommendation." *Id.* at 122. The court found that 10 U.S.C. § 1558(f) imposed an administrative exhaustion requirement, and it determined that the plaintiff had failed to show that the requirement had been satisfied, either by his request for a special selection board

or through the BCNR's review of the SERB decision. *Id.* at 123–24. It thus dismissed the plaintiff's claims for lack of subject matter jurisdiction. *Id.* at 125.

Given the clear language of the statute, the *Byrum* reasoning should govern the outcome in this matter. Like the plaintiff in *Byrum*, plaintiff here does not dispute that section 1558(f)(1) applies to his request for retroactive assignment to the FTS and AR programs, or his related request for a retroactive promotion to Colonel. *See* Pl.'s Mem. at 6–8. So, like the plaintiff in *Byrum*, plaintiff "must demonstrate that he applied for a special board under § 1558(f) before judicial review becomes available to him." *Byrum*, 783 F. Supp. 2d at 124, citing 10 U.S.C. § 1558(f).

But plaintiff has not shown that he ever requested review by a "special board" or that a "special board" was ever convened, and so the Court finds that it lacks subject matter jurisdiction over plaintiff's request for review of the BCNR's decision pursuant to 10 U.S.C. § 1558(f)(1). Plaintiff offers four arguments in support of why he satisfied – or in the alternative, was not required to satisfy – the administrative precondition to bring this lawsuit, *see* Pl.'s Mem. at 6–8, but none of them relieve him from the statutory exhaustion requirement.

Plaintiff first contends that "[i]n rendering its decision on Plaintiff's petition, the [BCNR] acted as a special board under 10 U.S.C. § 1558(b)(1), thereby exhausting plaintiff's administrative remedies." Pl.'s Mem. at 6; *see also id.* at 7 ("[B]y accepting the opinion from [Marine Corps Headquarters] and making a final decision, the [BCNR] assumed the role of a special board."). But "[a]lthough plaintiff is correct that a board for correction of military records can be a 'special board,' section 1558(b)(1)(B) is clear that it is only so when 'designated as a special board by the Secretary concerned.'" *Crumley v. United States*, 122 Fed. Cl. 803, 806 (Fed. Cl. 2015), quoting 10 U.S.C. § 1558(b)(1)(B); *see also Byrum*, 738 F. Supp. 2d at 124 (rejecting the plaintiff's claims that the BCNR constituted a "special board" where "the record does not indicate that the Secretary

14

designated the BCNR as a special board").  Plaintiff does not allege that the Secretary ever made such a designation with regard to the BCNR in his case, or even that he asked the Secretary to do so, and therefore, this argument is unavailing.

Plaintiff next attempts to distinguish his case from *Byrum*, maintaining that "there was no need for Plaintiff to request an additional special board" because he "recognized the action of the [BCNR]" in reviewing his November 2010 petition "as a properly convened special board," and because he requested that the BCNR "convene a special selection board" as part of his January 2013 request for reconsideration.  Pl.'s Mem. at 7.  But for the same reasons, this contention fails: "the law is clear that a special selection board is a distinct and separate entity from a special board," *Byrum*, 783 F. Supp. 2d at 124, and only the Secretary, and neither a petitioner nor the BCNR itself, may designate a board for the correction of military records as a "special board."  *See* 10 U.S.C. § 1558(b)(1)(B).  There was no such designation in this case.

Plaintiff's third argument appears to be that the Marine Corps Headquarters "attempted, yet failed," to act as a "special board" in providing the February 2011 advisory opinion to the BCNR as part of its review of plaintiff's November 2010 petition.  Pl.'s Mem. at 8.  But plaintiff provides no support for the notion that the Marine Corps Headquarters could be authorized to act as a "special board," and there is no indication that it made efforts to do so in this case.

Finally, plaintiff claims that the purposes of exhaustion of administrative remedies – avoiding premature interruption of the administrative process, permitting the agency to apply its expertise and develop a record, and maintaining judicial efficiency – were advanced through the BCNR's review and decision, and he states that "convening an additional special board would not serve to further any of these three purposes."  *Id.*  But this is at bottom yet another argument for

why the Court should deem the BCNR to have been a "special board," and that argument is foreclosed by the statute.

"[A] court lacks jurisdiction to review decisions by the promotion boards and special selection boards if a plaintiff fails to exhaust his or her administrative remedies under § 1558." *In re Navy Chaplaincy*, 850 F. Supp. 2d 86, 103 (D.D.C. 2012); *see also Byrum*, 783 F. Supp. 2d at 123 ("[O]nly after a special board has considered the plaintiff's claim . . . can the court review the plaintiff's claim and provide appropriate relief."); *Crumley*, 122 Fed. Cl. at 806–07 (dismissing challenge to decision rendered by Air Force Board for Correction of Military Records for lack of jurisdiction pursuant to 10 U.S.C. § 1558(f) where the plaintiff failed to exhaust administrative remedies by seeking "special board" review). Because plaintiff has failed to exhaust his administrative remedies by seeking review of the critical decisions at the heart of his case by a "special board," this Court lacks jurisdiction over this matter. Thus, defendant's motion to dismiss will be granted in its entirety.[3]

## CONCLUSION

Because the Court concludes that it cannot award plaintiff the relief he seeks, and because he has failed to exhaust his administrative remedies as required by 10 U.S.C. § 1558(f), the Court

---

3       The Court also notes that even if the BCNR in this case had affirmatively found that plaintiff had exhausted his administrative remedies, the BCNR's determination would not bind the Court here, nor prevent it from determining that it does not possess subject matter jurisdiction over plaintiff's remaining claim for review of the BCNR's decision. *See Byrum*, 783 F. Supp. 2d at 124–25 ("[T]he BCNR's determination that the plaintiff exhausted all of his administrative remedies does not demonstrate that the plaintiff satisfied the special board requirement.").

finds that it lacks subject matter jurisdiction over this matter.  Thus, it will grant defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).[4]

      A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  February 5, 2016

---

4     Because the Court finds that it lacks subject matter jurisdiction over this matter, it will not reach the parties' motions for summary judgment.