# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THOMAS V. SAKIEVICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 14-1671 (ABJ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Lieutenant Colonel Thomas V. Sakievich initially brought this action against the United States seeking to set aside certain decisions of the Department of the Navy's Board for the Correction of Naval Records ("BCNR") as arbitrary, capricious, unsupported by evidence, and contrary to law, pursuant to 10 U.S.C. § 1552 and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* Compl. [Dkt. # 1] ¶ 1. The Court dismissed the case for lack of jurisdiction because plaintiff had failed to exhaust his administrative remedies. *Sakievich v. United States*, 160 F. Supp. 3d 215 (D.D.C. 2016). Plaintiff then undertook to complete the administrative process: he requested that the Secretary of the Navy convene a Special Board to review four decisions denying program selections based upon his naval record in 1991, 1992, 1996, and 1999; and, if the Special Board decided in his favor, he requested the Secretary also convene a Special Selection Board to review two decisions denying officer promotions in 2004 and 2005. Am. Compl. [Dkt. # 33] ¶ 96. The Assistant Secretary of the Navy, under authority delegated to him by the Secretary, denied both of these requests on December 21, 2017, and on April 6, 2018, plaintiff filed an Amended Complaint in this Court seeking review of those decisions. *Id.* ¶ 100.

Pending before the Court are the parties' cross-motions for summary judgment. After reviewing the parties' motions, including the attachments thereto, the administrative record, the supplemental administrative record, and the relevant authorities, the Court will grant defendant's motion for summary judgment, and plaintiff's motion will be denied.

## BACKGROUND

### I.     Governing Law and Regulations

This case involves two decisions made by the Assistant Secretary of the Navy, Manpower & Reserve Army, under decisional authority delegated to him by the Secretary of the Navy: (1) the decision denying plaintiff's request to convene a Special Board to review the non-select decisions of the Full-Time Support ("FTS")/Active Reserve ("AR") program selection boards of 1991, 1992, 1996, and 1999; and (2) the decision denying plaintiff's request to convene a Special Selection Board to review the non-select decisions of the FY 2005 and FY 2006 Colonel promotion selection boards. Am. Compl. ¶ 100.

A Special Board is defined as:

> [A] board that the Secretary of a military department convenes under any authority to consider whether to recommend a person for appointment, enlistment, reenlistment, assignment, promotion, retention, separation, retirement, or transfer to inactive status in a reserve component instead of referring the records of that person for consideration by a previously convened selection board which considered or should have considered that person.

10 U.S.C. § 1558(b)(1)(A). The statute provides that a board convened to correct military records, under § 1552, can be designated a Special Board by the Secretary of the Navy. *Id.* § 1558(b)(1)(B). A Special Board does not include a Special Selection Board, which is convened to review decisions made by promotion boards under § 628 or § 14502. *Id.* § 1558(b)(1)(C).

The statute also states that a decision not to convene a Special Board may be reviewed by a federal court, which can set aside the decision "only if the Court finds the determination to be

"(i) arbitrary or capricious; (ii) not based on substantial evidence; (iii) a result of material error of fact or material administrative error; (iv) or otherwise contrary to law." *Id.* § 1558(f)(2)(A).

The statute goes on to provide that "[t]he Secretary of each military department shall prescribe regulations to carry out this section[,]" *id.* § 1558(e)(1), including "[t]he circumstances under which consideration of a person's case by a special board is contingent upon application by or for that person," and "[a]ny time limits applicable to the filing of an application for such consideration." *Id.* § 1558(e)(2). The Secretary has not yet implemented regulations to carry out this statute.

A Special Selection Board, by contrast, is convened to determine whether an officer should have been selected or considered for a promotion by a promotion board. *See* 10 U.S.C. §§ 628, 14502. A federal court may set aside a decision not to convene a Special Selection Board "[i]f a court finds the determination to be arbitrary or capricious, not based on substantial evidence, or otherwise contrary to law[.]" 10 U.S.C. § 14502(h)(1). This statute also sets forth that decisions of the Secretary of the Navy pursuant to this statute will be made "under regulations prescribed by the Secretary of Defense." *Id.* § 14502(b)(1); *see also* 10 U.S.C. § 628(j)(1) (setting forth that the Secretary "shall prescribe regulations to carry out this section" and that they must be "approved by the Secretary of Defense"). The Department has promulgated regulations implementing the statute concerning Special Selection Boards. *See* Secretary of the Navy Instruction 1420.1B, Ex. A to Def.'s Mot. [Dkt. # 36-1] ("SECNAVINST 1420.1B").

In sum, a Special Board may be convened to address a wide variety of issues that "selection boards" consider. A Special Selection Board may be convened for the more limited purpose of reviewing decisions of "promotion boards" and specifically, officer promotions. Both statutes provide that a court may only set aside a determination by the Secretary if it is arbitrary or

capricious, not based on substantial evidence, or otherwise contrary to law. But the statute concerning the convening of a Special Board has no implementing regulations, while the Special Selection Board statute does.

## II. Factual Background

Plaintiff is a retired United States Marine Corps Lieutenant Colonel with a long history of military service, and his original complaint contained a number of challenges to decisions made by the Marine Corps with regard to his military record and his terms of service. Am. Compl. ¶¶ 2, 8–91 (setting forth the facts contained in the original complaint). The Court will summarize only that portion of the factual background and procedural history that is relevant to resolving the pending motions for summary judgment.

Plaintiff enlisted in the Marine Corps on April 17, 1975 and served four active duty years in the infantry, obtaining the rank of Sergeant. Administrative Record [Dkt. # 22] ("AR") 96, 514–17. From April 1979 through April 1981, he served in the Marine Corps Reserve. AR 96. In December 1982, he graduated from the Marine Corps Officer Candidate School and was commissioned on active duty as a Second Lieutenant. AR 526–28.

On March 1, 1987, plaintiff began a two-year tour in the Full-Time Support ("FTS") program, a Marine Corps Reserve program which placed reservists on active duty orders for periods of up to four years. AR 614, 640. He again received largely positive Fitness Reports throughout this period and was promoted to Captain. AR 159–62, 660–79. However, plaintiff believed that some of the Fitness Reports were "erroneous and unjust," and on January 14, 1991, he asked the BCNR to remove two of the Fitness Reports from his record. AR 46–49, 346–81. The BCNR referred this request to the Performance Evaluation Review Board ("PERB"). AR 80.

While that referral was pending, plaintiff applied for another active duty tour in the FTS program, and the FTS Selection Board was convened on March 12, 1991. AR 641–46. At that time, plaintiff's military record still contained the two reports plaintiff had petitioned to have removed, and it was also missing a positive report that plaintiff had previously resubmitted to the Marine Corps. AR 176. Despite the fact that the PERB found in plaintiff's favor and ordered the two reports removed from his record on March 13, 1991, the FTS Selection Board was not notified of those changes. AR 81, 170, 691. On April 2, 1991, the FTS Selection Board denied plaintiff's application for an extension on FTS. AR 82. The Selection Board stated "[c]ompetition was very keen. Many qualified individuals were considered and only the most highly qualified were chosen." *Id.* Plaintiff attributes his non-selection to the failure to correct his military record, and states that he "protested the incorrect findings of the FTS Selection Board," but "was notified by Marine Corps seniors that he had no recourse." He was honorably released from active duty on August 31, 1991. Am. Compl. ¶¶ 36–37; AR 94–95.

In March 1992, plaintiff received a copy of his military record, and he discovered that records were either missing or incorrect. AR 150, 300. He repeatedly contacted the Marine Corps Headquarters in an effort to correct his record, and on May 28, 1992, he reapplied for the FTS program and included the missing documents as part of his application, along with "numerous supporting recommendations" from his superiors. AR 297–98, 300. On August 6, 1992, plaintiff was notified that he had been selected as an alternate for the FTS program. AR 108, 406, 623.

In September 1992, at the end of his contracted period of service, plaintiff was again honorably released from active duty. AR 200; Am. Compl. ¶ 47. In 1993, he obtained civilian employment and continued his reserve service. AR 200; Am. Compl. ¶ 48. In September 1994, he was promoted to Major. AR 200; Am. Compl. ¶¶ 46, 49–50. Between July 1995 and December

1995, plaintiff again requested a copy of his military record and undertook significant efforts to locate and provide records that were missing from his file. AR 109; Suppl. Administrative Record [Dkt. # 35] ("Suppl. AR") 180. He asserts that he also contacted Marine Corps officials to voice his concerns that the records that were submitted to the FTS Selection Boards in 1991 and 1992 were incomplete, and that the omissions affected his applications. Am. Compl. ¶ 54.

On December 18, 1995, plaintiff applied to the Active Reserve ("AR") program, which had replaced the FTS program that year. Am. Compl. ¶¶ 16 n.2, 55. On February 15, 1996, he was notified that he did not possess "a grade and/or 'hard-skill' MOS [Military Occupational Specialty] match" for the AR program, and would be considered "as an alternative." AR 110. Shortly thereafter, plaintiff discovered that the two Fitness Reports that had been ordered removed by the PERB in March 1991 were still included in his file and had been considered by the AR Accession Board. AR 112. Plaintiff attempted to correct this error, but in March 1996, he was informed that he was not selected for the AR program. Suppl. AR 183; Am. Compl. ¶¶ 58–59.

Plaintiff continued his reserve service, and he reapplied for the AR program on July 21, 1999, *see* Suppl. AR 184–85, but he was not selected because "[t]he highest grade the AR program would allow were specific flight trained Majors." Am. Compl. ¶¶ 60–63; AR 39. On August 1, 1999, plaintiff was promoted to Lieutenant Colonel, and in April 2000, a senior Marine Corps official specifically requested that the rank requirement be waived, and that plaintiff be approved for active duty with the AR program. Suppl. AR 188. On August 9, 2000, the next AR Accession Board convened, and plaintiff was selected for the AR program. AR 124–25; Suppl. AR 189. However, he was informed that accepting the assignment "would essentially forfeit [his] opportunity to be promoted to the rank of Colonel in the AR," because he would be compared to Marines who had more years of experience in the program. Am. Compl. ¶ 67 & n.11; AR 119–

23.  He accepted the AR assignment in September 2000.  Am. Compl. ¶¶ 67 n.11, 69; Suppl. AR 195–96.

In January 2003, plaintiff applied for career designation in the AR program, meaning he would no longer need to reapply to the program, and his request was approved.  AR 126.  In August 2003, plaintiff applied for promotion to Colonel, but in October 2003, he learned that he did not receive the promotion.  Am. Compl. ¶ 75.  In his view, this was due to "his fragmented career, late reassignment back to the AR (formerly FTS), [the Marine Corps Headquarters'] mishandling of his professional records, and his multiple forced moves from one promotion track to another."  *Id.* He reapplied for the promotion in September 2004, but was again rejected.  *Id.* ¶¶ 78–79.  Plaintiff retired on November 1, 2006 because of his two non-selections to Colonel.  *Id.* ¶¶ 81, 82, 84.

On September 27, 2010, plaintiff was advised that as part of his civilian employment, he could petition the BCNR for relief of "over seven lost years of active duty with the FTS/AR program, due to the mishandling of his professional files," Am. Compl. ¶¶ 85–86, and on November 15, 2010, he petitioned the BCNR for relief.  AR 34–41, 338–39.  The Marine Corps Headquarters Reserve Affairs Division issued an Advisory Opinion to the BCNR on February 11, 2011, recommending that plaintiff's request be denied on the grounds that he "was not competitive to be assigned to the FTS program in 1991 nor the AR program in 1996."  AR 287.  Plaintiff submitted a rebuttal to that opinion on March 15, 2011, AR 140–44, but on April 5, 2011, the BCNR denied his request for relief, stating that "the evidence does not show that you[r] non-selection for the program was erroneous or unjust or that any fitness reports should be removed from your record."  AR 180–81.

In January 2013, plaintiff requested that the BCNR reconsider his request, and he submitted new evidence in support of his petition, including statements from several superior officers who

had previously served as members of a selection board. AR 26, 31, 191–281 (enclosures to his petition). The BCNR denied his request for reconsideration on February 20, 2013. AR 23–24.

## III.    Procedural History

Plaintiff initiated this action on October 7, 2014. *See* Compl. He asserted that the BCNR's conclusions were arbitrary and capricious, unsupported by substantial evidence, based on material error, and that the Marine Corps Headquarters was derelict in its duty to maintain accurate records. *Id.* ¶¶ 92–101. He asked the Court to set aside the Board's decision and remand the case to the Board directing it to amend plaintiff's military record and promote him to Colonel. *See* Compl., Relief, at 18.

On March 31, 2015, defendant moved to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1), arguing that plaintiff's requests for relief were not justiciable and that he failed to exhaust his administrative remedies as required by 10 U.S.C. § 1558(f). Def.'s Mot. to Dismiss [Dkt. # 9] at 10–16. On February 5, 2016, this Court granted defendant's motion, finding that it could not award the relief plaintiff sought and did not have subject matter jurisdiction because plaintiff had failed to exhaust his administrative remedies. *Sakievich*, 160 F. Supp. 3d at 225–26. Plaintiff appealed this decision on April 4, 2016. Notice of Appeal [Dkt. # 27]. During the pendency of the appeal, plaintiff undertook an administrative exhaustion process, and the parties jointly moved to hold the case in abeyance in the D.C. Circuit. Joint Status Report [Dkt. # 31] ("Joint SR"); Suppl. AR 61–62.

On December 23, 2016, plaintiff sent a request to the Secretary of the Navy to convene a Special Board pursuant to 10 U.S.C. § 1558 to review his non-selection by the 1991 and 1992 FTS program selection boards and the 1995 and 1999 AR program selection boards on the grounds that his non-selections were due to "repeated mishandling of his official military personnel file" which

resulted in his file having incomplete or inaccurate information. Suppl. AR 1. Plaintiff also requested that, in the event that the Special Board determined that he was qualified for those programs, the Secretary then convene a Special Selection Board to review his 2004 and 2005 non-selections to Colonel in the AR. *Id.*

On June 1, 2017, the Director of the Marine Corps Headquarters Reserve Affairs Division ("HQMC RA") issued a memorandum to the Secretary of the Navy recommending denial of plaintiff's request for a Special Board because plaintiff "failed to demonstrate that there was an irregularity, error, or injustice in the conduct" of the FTS/AR program selection boards. Suppl. AR 526. Specifically, the Director observed that plaintiff was not selected by the 1996 selection board because he "did not possess the skills that the AR program was seeking," and he was not selected by the 1999 selection board because at that time "[plaintiff] was a senior Major and the AR Program was seeking more junior officers." *Id.* at 523. The Director further stated: "[plaintiff's] military record was simply not strong enough to warrant his selection by the 1991, 1992, 1996, or 1999 FTS or AR boards," *id.* at 524, and that plaintiff had "failed to demonstrate why the Marine Corps should conduct a special board in the interest of justice when over 17 years have passed since the 1999 AR Program selection board." *Id.* at 526.

On August 8, 2017, the Secretary of the Navy approved a six-month extension for consideration of plaintiff's requests, as permitted by 10 U.S.C. § 1558(f)(4)(C). Suppl. AR 527.

On September 25, 2017, the Deputy Commandant for Manpower and Reserve Affairs ("M&RA") issued a memorandum to the Secretary recommending that he deny plaintiff's requests for a Special Board and a Special Selection Board. Suppl. AR 529–31. He noted that the "Marine Corps has not promulgated policy that specifically addresses the requirements for a special board," but because the "BCNR can be designated by the Secretary of the Navy as a special board, the

BCNR's policies are informative." *Id.* at 529. Thus, he referred to the BCNR procedures, set forth in SECNAVINST 5420.193 and 10 U.S.C. § 1552, as a guide to review plaintiff's request for a Special Board. *Id.* at 528–31.

After reviewing the record, the Deputy Commandant explained that plaintiff's repeated non-selections for the AR and FTS programs were "due to the needs of the Marine Corps and the competitive nature of the program." *Id.* at 530. He agreed with an advisory opinion issued by the Reserve Affairs Division in February 2011 which had reviewed plaintiff's "military record and concluded he was not competitive for the FTS and AR programs due to a lack of 'break-out comments that are normally associated with highly competitive officers,' as well as the markings regarding his overall value to the Service." *Id.* And, he observed that plaintiff's "own petition to the BCNR explained that he did not possess the qualifications that the selection boards sought." *Id.* Thus, "[t]he evidence provided by [plaintiff] fail[ed] to demonstrate any irregularity, error, or injustice in the conduct of the FTS and AR selection boards." *Id.* With respect to the request for a Special Selection Board, the Deputy Commandant found that plaintiff had not demonstrated "material error, lack of material information, or that either the FY05 Board or FY06 Board acted in a manner contrary to law" and noted that plaintiff's requests were extremely untimely. *Id.* at 531.

On December 21, 2017, the Assistant Secretary of the Navy, under decisional authority delegated by the Secretary of the Navy, denied plaintiff's requests. Suppl. AR 533. In denying plaintiff's request to convene a Special Board, the Assistant Secretary applied the regulations applicable to Special Selection Boards found in SECNAVINST 1420.1B, rather than the procedures applicable to BCNR decisions as the Deputy Commandant applied, because the Judge

Advocate General (JAG) of the Navy advised him to do so based on past practice. *Id.* at 532, 533

n.1. The decision stated:

> The special board requests are hereby denied on the following bases as recommended in the memoranda of the Director, Reserve Affairs Division; Deputy Commandant for Manpower and Reserve Affairs, and the Judge Advocate General of the Navy. The requests are untimely because they were submitted in December 2016, more than three years after the 1991, 1992, 1996, and 1999 selection board results were made public. The requestor also did not exercise reasonable diligence in discovering and correcting errors in his official record prior to the 1991 and 1996 selection boards. Additionally, the requestor has not demonstrated by a preponderance of the evidence that the actions of the 1991, 1992, 1996, and 1999 selection boards were contrary to law, or involved material error of fact or material administrative error.

*Id.* at 533 (footnote omitted). The Assistant Secretary denied plaintiff's request for a Special

Selection Board on similar grounds:

> The special selection board requests are hereby denied on the following bases. The requests are untimely because they were submitted in December 2016, more than three years after the fiscal year 2005 and 2006 promotion selection board results were made public. Furthermore, without favorable action on the special board requests to show he should have entered the FTS/Active Reserve program earlier, there is no basis to grant him consideration by a special selection board. Finally, the requestor has not demonstrated by a preponderance of the evidence a material error, lack of material information, or that either the fiscal year 2005 and 2006 promotion selection boards acted in a manner contrary to law.

*Id.*

In light of these denials, the D.C. Circuit granted the parties' motion to voluntarily remand

the case to this Court so that the Court could review the Navy's decisions in the first instance. *See*

Joint SR; *see* Mandate [Dkt. # 29].

Defendant moved for summary judgment, arguing that the decisions refusing to convene a

Special Board and a Special Selection Board were reasonable and within the Navy's discretion to

make, and therefore the Court should not overturn them. Def.'s Mot. for Summ. J. [Dkt. # 36]

("Def.'s Mot."); Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 36] ("Def.'s Mem.").

Plaintiff filed an opposition and cross-motion for summary judgment, arguing that the decision to deny his request for a Special Board was premised upon an incorrect regulation, and this error rendered it arbitrary and capricious and not based upon substantial evidence.  Pl.'s Opp. & Mot. for Summ. J. [Dkt. # 40] ("Pl.'s Mot."); Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. [Dkt. # 40-1] ("Pl.'s Mem.").

Because the Navy's decisions to deny plaintiff's requests for a Special Board and Special Selection Board were both reasonable, well-explained and grounded in the record, and within the agency's discretion to make, the Court will grant defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  However, in cases involving review of agency action under the Administrative Procedure Act ("APA"), Rule 56 does not apply due to the limited role of a court in reviewing the administrative record.  *Select Specialty Hosp.-Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 21 (D.D.C. 2011).  Under the APA, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the court's role is to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985), citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971); *see also Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977).

Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law," 5 U.S.C. § 706(2)(A), "in excess of statutory jurisdiction," *id.* § 706(2)(C), or "without observance of procedure required by law." *Id.* § 706(2)(D). The scope of review is narrow. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency's decision is presumed to be valid, *see Volpe*, 401 U.S. at 415, and the court must not "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43.

An agency's decision is arbitrary and capricious if it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* The court must, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.*, citing *Bowman Transp., Inc. v. Ark.-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974).

A court must be satisfied, though, that the agency has examined the relevant data and articulated a satisfactory explanation for its action, "including a 'rational connection between the facts found and the choice made.'" *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006), quoting *State Farm*, 463 U.S. at 43. Moreover, the "agency must cogently explain why it has exercised its discretion in a given manner . . . and that explanation must be sufficient to enable [a court] to conclude that the agency's action was the product of reasoned decisionmaking." *Id.*, quoting *State Farm*, 463 U.S. at 48, 52.

Judicial review of military personnel decisions is "unusually deferential." *Mueller v. Winter*, 485 F.3d 1191, 1198 (D.C. Cir. 2007). This standard "substantially restrict[s] the authority of the reviewing court to upset the Secretary's determination." *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). "This deferential standard is calculated to ensure that the

courts do not become a forum for appeals" for every military member, "a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000).

## ANALYSIS

I. **The Assistant Secretary's decision to deny plaintiff's request to convene a Special Board to review the decisions of the 1991, 1992, 1996, and 1999 selection boards was reasonable under the deferential standard.**

A decision not to convene a Special Board may be set aside "only if the Court finds the determination to be (i) arbitrary or capricious; (ii) not based on substantial evidence; (iii) a result of material error of fact or material administrative error; (iv) or otherwise contrary to law." 10 U.S.C. § 1558(f)(2)(A). Because there is no implementing regulation for this statute, the Assistant Secretary chose to use the regulations applicable to Special Selection Boards, SECNAVINST 1420.1B, based upon the recommendation of Vice Admiral J.W. Crawford III of the Judge Advocate General Corp for the Navy. Suppl. AR 532. The Assistant Secretary found, based upon the recommendations and analyses of the Director of HQMC RA, Deputy Commandant of M&RA, and the JAG, that plaintiff's request should be denied for three reasons:

> The requests are untimely because they were submitted in December 2016, more than three years after the 1991, 1992, 1996, and 1999 selection board results were made public. The requestor also did not exercise reasonable diligence in discovering and correcting errors in his official record prior to the 1991 and 1996 selection boards. Additionally, the requestor has not demonstrated by a preponderance of the evidence that the actions of the 1991, 1992, 1996, and 1999 selection boards were contrary to law, or involved material error of fact or material administrative error.

Suppl. AR 533.

Plaintiff argues that the Assistant Secretary acted arbitrarily and capriciously when he chose to look to the regulations implementing § 14502, when the "most appropriate" regulations to use would have been those implementing the correction of military records statute, § 1552,

14

SECNAVINST 5420.193. Pl.'s Mem. at 15–18. According to the plaintiff, if the Assistant Secretary had used the correct regulations, it would have been necessary "to explain why a waiver of the three-year statute [of limitations] is not in the interest of justice." *Id.* at 18. Since that was not done, plaintiff maintains that the Assistant Secretary did not adequately explain the rationale for his decision, and the Court should remand the matter for further consideration. *Id.* For the reasons stated below, the Court finds that it was not arbitrary or capricious for the Assistant Secretary to use the regulations created for Special Selection Boards to a deny a request for a Special Board. Furthermore, the record indicates that even if the Assistant Secretary was required to apply the BCNR regulations, he would have still denied the request.

### A. In the absence of implementing regulations for Special Boards, it was not arbitrary or capricious for the Assistant Secretary to apply the regulations implementing the Special Selection Board statute.

As noted above, there is no implementing regulation for § 1558.[1] But in the absence of an implementing regulation, it was not arbitrary or capricious to seek guidance from the regulations applicable to § 14502 because it is substantially similar to § 1558.

Section 1558 defines a "Special Board" to mean "a board that the Secretary of a military department convenes under any authority to consider whether to recommend a person for . . . promotion . . . instead of referring the records of that person for consideration by a previously convened selection board which considered or should have considered that person." § 1558(b)(1)(A). Similarly, section 14502(a)(1) states: "In the case of an officer or former officer

---

1       Plaintiff correctly states that the Secretary is required to implement regulations carrying out 10 U.S.C. § 1558, *see id.* § 1558(e)(1), and points to the fact that the Air Force has implemented regulations pursuant to this statute. Pl.'s Mem. at 16. Defendant responds that not all branches of the military have complied, *see* Def.'s Reply to Pl.'s Mot. [Dkt. # 44] ("Def.'s Reply") at 4 n.2 (noting that the Army has not developed implementing regulations), and that the Navy is in the process of creating a regulation and expects it to be completed "by the end of [2018]." *See* Eva M. Loser Decl., Ex. 1 to Def.'s Reply [Dkt. # 44-1] ("Loser Decl.") ¶ 6.

who the Secretary of the military department concerned determines was not considered for selection for promotion . . . by a mandatory promotion board . . . the Secretary concerned shall convene a special selection board under this subsection to determine whether such officer or former officer should be recommended for promotion."

Thus, both § 1558 and § 14502 address convening a board to review a personnel decision made by either a selection board or a promotion board (both of which can promote someone). The primary difference between the statutes is that § 14502 specifically deals with promotions of officers, while § 1558 addresses a wider range of personnel decisions.

The regulations plaintiff posits were most relevant implement § 1552, which by contrast, generally address the correction of a military record. While a board convened to correct a military record may be considered a Special Board under § 1558, it must be specifically designated as such by the Secretary. 10 U.S.C. § 1558(b)(1)(B). There is no indication, and plaintiff does not argue, that plaintiff's request for a Special Board was designated a board convened to correct a military record under § 1552.

Furthermore, § 1558 and § 14502 both specifically provide for judicial review and adopt similar standards of review. *Compare* 10 U.S.C. § 14502(h) ("If a court finds the determination to be arbitrary or capricious, not based on substantial evidence, or otherwise contrary to law, it shall remand the case to the Secretary concerned.") *with id.* § 1558(f)(2)(A) ("The court may set aside the Secretary's determination only if the Court finds the determination to be "(i) arbitrary or capricious; (ii) not based on substantial evidence; (iii) a result of material error of fact or material administrative error; (iv) or otherwise contrary to law."). Section 1552, however, does not contain a judicial review provision; it is subject to judicial review only under the Administrative Procedure Act's presumption of judicial review. *Kreis*, 866 F.2d at 1513.

Given the similarities between § 1558 and § 14502, and the fact that the Assistant Secretary was relying on the advice of counsel when selecting the regulatory procedure to follow, it was not arbitrary or capricious for the Assistant Secretary to use the regulations promulgated pursuant to § 14502 to deny plaintiff's request to convene a Special Board.[2] Also, it is important to note that plaintiff does not argue that the Navy acted pursuant to the wrong statute or failed to articulate specific reasons for his decision.

Moreover, the Navy has submitted evidence to show that it has consistently applied SECNAVINST 1420.1B when considering whether a Special Board should be convened. Captain Eva M. Loser of the Judge Advocate General's Corps of the Navy states:

> In the absence of regulations, it has been the consistent practice of the Secretary of the Navy and the Assistant Secretary of the Navy (Manpower & Reserve Affairs) to apply the procedures applicable to [Special Selection Boards] set forth in title 10, U.S. Code, sections 628 and 14502, and Secretary of the Navy Instruction (SECNAVINST) 1420.1 (Series), to special board requests submitted by current and former commissioned officers of the Navy and Marine Corps.

Loser Decl. ¶ 3. She continues:

> Records maintained by the OJAG Administrative Law Division (Code 13) indicate that the Department of the Navy has processed at least fifteen (15) special board requests since 2012 and, in all cases, the Secretary of the Navy and the Assistant Secretary of the Navy (Manpower & Reserve Affairs) applied the procedures applicable to [Special Selection Boards] set forth in title 10, U.S. Code, sections

---

2     Plaintiff also argues that in the absence of a controlling regulation, the Secretary cannot "choose the most advantageous one to his position" and if he does, the agency's decision should not be entitled to *Chevron* deference. Pl.'s Mem. at 15. For this proposition plaintiff cites a case from the Third Circuit: *Chao v. Community Trust Co.*, 474 F.3d 75, 85 (3d Cir. 2007). But in that case, the Department of Labor interpreted a definition found in the Federal Trade Commission's regulations. *Id.* at 84–85. The court stated, "[w]hile we give agencies' regulations controlling-weight deference, it is only when agencies are enforcing their *own* regulations." *Id.* (emphasis in original) (internal citations omitted), citing *Sec'y of Labor v. Excel Mining, LLC*, 334 F.3d 1, 7 (D.C. Cir. 2003); *Amerada Hess Pipeline Corp. v. Fed. Energy Reg. Comm'n*, 117 F.3d 596, 600 (D.C. Cir. 1997). The Court does not dispute that principle. Here, the Assistant Secretary was not using another agency's regulation.

628 and 14502, and SECNAVINST 1420.1B in making the determination of whether to grant or deny the request.

*Id.* ¶ 5.[3]

Plaintiff makes four arguments as to why the Court should not credit Captain Loser's declaration: (1) the "consistent use" she speaks of only dates back to 2012, which is two years after plaintiff's "first application"; (2) her conclusion of "consistent use" is based on an insufficient number of applications; (3) there is no document memorializing this practice; and (4) her declaration does not recognize that both the Deputy Commandant and Director of HQMC RA used BCNR regulations in their recommendations to the Secretary. *See* Pl.'s Reply in Supp. of his Cross-Mot. for Summ. J. [Dkt. # 47] ("Pl.'s Reply") at 2.

Plaintiff's first two arguments rely on a misunderstanding of what a Special Board request is. The "first application" he refers to was an application to correct his military records pursuant to § 1552. Pl.'s Mem. at 3–4; Pl.'s Reply at 2–3. It was not a request to convene a Special Board; plaintiff did not request a Special Board until December 2016. And in his second argument, plaintiff argues that Captain Loser only reviewed fifteen applications to draw her conclusions, when the BCNR processes over 12,000 petitions annually. Pl.'s Reply at 3. But a board convened pursuant to § 1552 is not the same as a Special Board convened pursuant to § 1558. It is true that a Special Board can include a board for the correction of military records, but only "if designated a Special Board by the Secretary concerned." 10 U.S.C. § 1558(b)(1)(B). The boards referenced in § 1552 and § 1558 are therefore not coterminous, and plaintiffs' arguments regarding BCNR applications is misplaced.

---

3    Plaintiff has not objected to the submission of the declaration in a case that is supposed to be decided based on the administrative record.

And, while there is no document memorializing the use of the Special Selection Board regulations in considering Special Board requests, there does not appear to be any document stating that the BCNR regulations should be applied to Special Board requests. Thus if the Assistant Secretary had followed the course that plaintiff recommends, it would be equally subject to attack.

Finally, the Court does recognize that both the Deputy Commandant and Director referred to the standards set forth in the regulations implementing § 1552. Suppl. AR 524 (referencing the "injustice" standard); *id.* at 532. But the fact that they used the BCNR standard does not mean it was arbitrary and capricious for the Assistant Secretary, on the advice of the JAG, to use the standard applicable to Special Selection Boards. And, both the Deputy Commandant and the Director recommended denying plaintiff's request for a Special Board even under the "more permissive" BCNR standard that plaintiff argues should have been used. Thus, the Court finds that the Assistant Secretary's decision to use the Special Selection Board regulations was not arbitrary or capricious.

### B. The Assistant Secretary's decision to deny plaintiff's request to convene a Special Board was reasonable.

After considering the analyses and recommendations of the Director of HQMC RA and the Deputy Commandant of M&RA, the Assistant Secretary denied plaintiff's request for a Special Board on three grounds: (1) it was untimely; (2) plaintiff did not exercise reasonable diligence in discovering and correcting errors in his official record prior to the 1991 and 1996 selection boards; and (3) plaintiff had not demonstrated that the actions of the 1991, 1992, 1996, and 1999 selection boards were contrary to law or involved material error of fact or material administrative error.

To uphold an agency decision, a court must be satisfied that the agency has examined the relevant data and articulated a satisfactory explanation for its action, "including a 'rational connection between the facts found and the choice made.'" *Alpharma*, 460 F.3d at 6, quoting *State*

*Farm*, 463 U.S. at 43 (1983). D.C. Circuit precedent instructs that the Court need only determine "whether the Secretary's decision making process was deficient, not whether his decision was correct." *Kreis*, 866 F.2d at 1511. Moreover, the "agency must cogently explain why it has exercised its discretion in a given manner . . . and that explanation must be sufficient to enable [a court] to conclude that the agency's action was the product of reasoned decisionmaking." *Alpharma*, 460 F.3d at 6, quoting *State Farm*, 463 U.S. at 48, 52. "Once assured the [agency] has engaged in reasoned decisionmaking, it is not for [the Court] to reweigh the conflicting evidence." *See Ind. Mun. Power Agency v. FERC*, 56 F.3d 247, 254 (D.C. Cir. 1995).

The Court finds that the Assistant Secretary's decision to deny convening a Special Board was the product of reasoned decisionmaking. The Assistant Secretary stated that plaintiff did not demonstrate that the decisions of the four selection boards in the 1990s were contrary to law or involved material error of fact or material administrative error. The Assistant Secretary's finding was predicated on the recommendations of the Deputy Commandant of M&RA and the Director of the Reserve Affairs Division.[4] The Director reasoned that the evidence submitted by plaintiff did "not demonstrate that an irregularity, error, or injustice occurred, but rather that his non-selection was due entirely to his own record and actions, the competitive nature of the FTS and AR programs, and the needs of the Marine Corps at the time that he was applying for selection." Suppl. AR 524. The Director also stated that in 1996, plaintiff "did not possess the skills that the

_____

4       The Assistant Secretary may rely on the recommendations provided to him from the chain of command, and the Court may look to the reasoning relied on to determine the reasonableness of the agency's decision. *See Roberts v. United States*, 741 F.3d 152, 158–59 (D.C. Cir. 2014) (noting that the BCNR is obliged to provide a reasoned explanation for its decision but finding that the BCNR can meet that obligation by referring the reader to relevant sources such as the advisory opinions it receives). The Assistant Secretary's decision references the recommendations and analyses provided by the Director and Deputy Commandant, and thus the Court may look to their memoranda to determine the agency's reasoning.

AR program was seeking." *Id.* at 523. In 1999, the program wanted more junior officers, and he was a Senior Major. *Id.* He explained that plaintiff's military record was "simply not strong enough to warrant his selection by the 1991, 1992, 1996, or 1999 FTS or AR Boards." *Id.* at 524. He cites to a February 2011 advisory opinion that noted "a lack of break out comments that are normally associated with highly competitive officers." *Id.* And the Director opined that "[b]ased on his performance evaluations, [plaintiff] was not a highly competitive officer and the FTS and AR programs are highly competitive programs." *Id.* The Director then goes on to address each selection board decision and concludes that a Special Board was not warranted because plaintiff could not show that the non-selections were due to any irregularities, errors, or injustices. *Id.* at 524–25.

Similarly, the Deputy Commandant observed that in 1996, "HQMC notified [plaintiff] that he was not a grade or 'hard-skill' MOS match that met the needs of the AR program." Suppl. AR 529. And, in 1999, the AR program was accepting only "captains and specific flight-trained majors." *Id.* The Deputy Commandant found that the Reserve Affairs division did a thorough review in 2011, and that plaintiff's "repeated non-selection for the AR and FTS programs was due to the needs of the Marine Corps and the competitive nature of the program." Suppl. AR 530. Finally, the Deputy Commandant found that the "evidence provided by [plaintiff] fails to demonstrate any irregularity, error, or injustice in the conduct of the FTS and AR selection boards," and even if plaintiff had demonstrated such, his request for a Special Board is untimely, and he "has failed to explain . . . why it would be in the interest of justice to consider his untimely request." *Id.*

In his final decision, the Assistant Secretary also points out that plaintiff should have been more diligent in reviewing and correcting his records when he discovered the mistakes over

twenty-five years ago. Under Marine Corps Order 1610.11D (replaced by 1610.7), referenced in the Director's memorandum, it is a Marine's responsibility to ensure that his personnel file is accurate and complete, "especially in advance of eligibility before a particular selection board." *See* Ex. C to Def.'s Mot. [Dkt. # 36-3] ("MCO1610.7") at Ch. 8 ¶ 11(b). The individual Marine bears the burden to petition the BCNR and request a correction to a military personnel file. *See* Suppl. AR 525; Ex. B to Def.'s Mot. [Dkt. # 36-2] ("MCO1610.11D") § e.2(a). This aspect of the Assistant Secretary's decision was also consistent with the recommendations that flowed up the chain of command: both the Director and the Deputy Commandant observed that plaintiff should have been more diligent in correcting his records earlier. The Director in particular stated that plaintiff "had exercised reasonable diligence, any errors he allege[d] would have been identified and corrected prior to the convening of the selection boards." Suppl. AR 526.

Finally, the Assistant Secretary states that the requests were extremely untimely. At best, the request for a Special Board in December 2016 came seventeen years after plaintiff had notice that he was not selected for the 1999 AR selection board – fourteen years too late. Similarly, the Deputy Commandant and Director found that the plaintiff did not adequately explain why the request was so untimely and why it would be in the interest of justice to waive the three-year deadline.[5] Suppl. AR 530.

---

5    Plaintiff argues that § 1558 was created in 2001, and so he could not have brought a Special Board request prior to then. Pl.'s Mem. at 10 n.7. Defendant responds by pointing out that before 2001, the vehicle to correct the errors would have been under § 1552. Def.'s Reply at 7. Indeed, in 1991, plaintiff realized that his personnel file included two adverse reports and he petitioned the BCNR to remove these reports, so he was well aware of his avenues to pursue relief at the relevant time. And, his last denial occurred in 1999, so he could have brought a timely request for a Special Board in 2002. Besides, this argument does not address why his requests were years – not days or months – late.

Plaintiff argues that the decisionmaking process was deficient because the recommendations by the Director and the Deputy Commandant depended on an allegedly erroneous advisory opinion issued by HQMC RA in February 2011. He also argues that "no further review" of his record was conducted, and therefore the decision was not based on substantial evidence. Pl.'s Mem. at 20–21. This argument fails for three reasons. First, the Director and the Deputy Commandant did not simply adopt the conclusions from the February 2011 advisory opinion without any additional analysis. Each memorandum explained that plaintiff's request should be denied because he had not demonstrated that the selection boards' decisions amounted to an injustice or had relied on a material administrative error, and each pointed to specific reasons, such as plaintiff's service record and the needs of the programs at the time. Suppl. AR 522–33. Second, the 2011 advisory opinion was not the only document relied on and referenced by the Director and Deputy Commandant. *See* Suppl. AR 522 (listing the documents enclosed and references used, including plaintiff's applications to the FTS/AR program in 1992 and 1996; *Id.* at 530 (referencing the plaintiff's petition to the BCNR in 2010).

Third, it is not clear that plaintiff's characterization of the 2011 advisory opinion that was cited in the recommendations as "erroneous" is accurate. In plaintiff's cross-motion for summary judgment, he explains that the advisory opinion was issued in response to the application to correct military records he submitted in September 2010. Pl.'s Mem. at 3. In that application, he argued that but for the mishandling of his professional records, he would have been accepted into the FTS and AR programs in 1991 and 1996. *Id.* The HQMC RA issued the 2011 advisory opinion, recommending denial of the application, because it found:

> After a thorough review of [plaintiff's] entire Official Military Personnel File (OMPF), it is apparent that [he] was not highly competitive. [Plaintiff's] performance reports lack break-out comments that are normally associated with highly competitive officers. Out of the 19 reports from the previous performance

evaluation system, [plaintiff] received after departing the active component in 1985, he had one report with an "excellent" in general value to the service and 3 reports with an "excellent to outstanding" in general value to service. In his seven reports where he was in the "outstanding" value to service when he was compared to his peer, he was ranked 2 out of 2 on 4 occasions. Accession into other AR program has been highly competitive based on the needs of the Marine Corps and the AR program at the time of selection. Based off his performance and the needs of the Marine Corps, [plaintiff] was not competitive to be assigned to the FTS program in 1991 or the AR program in 1996.

*Id.* at 3–4; AR 287. Plaintiff petitioned for reconsideration, arguing that the Board had not considered the various statements from General Officers and Colonels he had submitted. Among those was an analysis conducted by a retired Marine Corps JAG, Colonel Wendy Stafford, which explained how the BCNR had significantly erred in conducting its review and denial. Pl.'s Mem. at 5–6. Despite this evidence, the BCNR again denied plaintiff's requested relief, stating:

After a careful review of his application with his supporting letter and enclosures, the Board was unable to find any new and material evidence or other matter it had not previously considered. The Board found [plaintiff] had provided documentation that is new, but not material, in that it would not have changed the outcome of his case. The Board further found the new documentation, *to the effect that [plaintiff] would have been competitive for selection to the Full Time Support Program in 1991 but for the two fitness reports whose removal has been directed by the Headquarters Marine Corps (HQMC) Performance Evaluation Review Board*, did not establish that he would, in fact, have been selected with a fully corrected record.

AR 23.

Plaintiff argues that the italicized text above amounts to a finding that plaintiff was competitive for the programs, and thus, "actually overturn[s]" the 2011 advisory opinion. Pl.'s Mem. at 21 n.10. But that statement, at best, is a description of the purpose for which plaintiff submitted the extra documents, not a finding that is tantamount to a reversal of the opinion. Thus, the fact that the Director and Deputy Commandant referenced the 2011 advisory opinion does not render the decisionmaking process deficient, because that opinion was not later found to be "clearly erroneous" as plaintiff contends, and the Director and Deputy Commandant each

conducted an independent analysis of plaintiff's petition and the administrative record. The fact that they ultimately agreed with the reasoning of the 2011 advisory opinion, and disagreed with plaintiff's interpretation of the evidence, does not mean they did not base their recommendations on substantial evidence.

Even if the Court were to find plaintiff's assessment of the evidence to be persuasive, the Court does not have the authority to set aside a decision that has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (quotation marks and citation omitted). Here, the agency "conducted a reasoned evaluation of the relevant information and reached a decision that, although perhaps disputable, was not 'arbitrary or capricious.'" *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 385 (1989). While "another decisionmaker might have reached a contrary result," the Assistant Secretary did not act contrary to law when he denied plaintiff's request to convene a Special Board. *Id.* Particularly in light of the "unusually deferential" standard under which the Court must review the agency's decision, *Winter*, 485 F.3d at 1198, since the agency examined the relevant data and articulated a satisfactory explanation for its denial, the Court finds that it was within the Assistant Secretary's discretion to deny plaintiff's request to convene a Special Board.

### C. Even if the Assistant Secretary had used the regulations applicable to the BCNR, as plaintiff argues he should have, plaintiff's request for a Special Board would have still been denied.

Even if plaintiff is correct, and the Assistant Secretary should have used the regulations implementing § 1552, SECNAVINST 5420.193, this error is harmless because it would not have changed the outcome. The APA requires courts reviewing agency action under the "arbitrary and capricious" standard to take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706. As

the D.C. Circuit put it, "[i]f the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration." *PDK Labs., Inc. v. U.S. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004); *Pittsburgh & Lake Erie R. Co. v. I.C.C.*, 796 F.2d 1534, 1542–43 (D.C. Cir. 1986) (denying petitioner's claims of prejudicial error because it "would not have changed the result").

If the regulations implementing § 1552 were controlling, plaintiff's request would have still been denied because it came well beyond the statutory time limit. Section 1552, like SECNAVINST 1420.1B, prescribes a three-year period for bringing requests for military record corrections: "No correction may be made under subsection (a)(1) unless the claimant . . . files a request for the correction within three years after discovering the error or injustice." 10 U.S.C. § 1552(b). But, "a failure to file within three years after discovery" may be excused if a board "finds it to be in the interest of justice." *Id.*

Plaintiff argues that the Assistant Secretary's decision and the recommendations it relies on do not sufficiently analyze why a waiver of the three-year time period was not in the interest of justice. Pl.'s Mem. at 18. But both the Director and Deputy Commandant analyzed plaintiff's request for a Special Board under the very standards plaintiff believes are applicable, and both found that plaintiff had not demonstrated that a waiver of the time limit was in the interest of justice, because plaintiff "failed to explain why he did not request a special board in a timely manner." Suppl. AR 530. The Director found that contrary to plaintiff's "assertions in his BCNR petition that he only identified the errors or injustices on 27 September 2010, he was on notice of his non-selection immediately after the boards in 1991, 1992, 1996, and 1999." *Id.* at 525–26. Further, the Director stated that "[g]enerally, claims that are older than three years are not heard by the BCNR without an explanation as to why it is necessary to hear the claim in the interest of

justice" and plaintiff did not provide a "compelling explanation" for his tardiness. *Id.* at 526. The Director reasoned that "[h]is failure to request a board within three years diminishes the credibility of his claims." *See id.* at 526. Similarly, the Deputy Commandant found that plaintiffs "failed to explain why he did not request a special board in a timely manner and why it would be in the interest of justice to consider his untimely request." Suppl. AR 530.

Therefore, regardless of whether SECNAVINST 5420.193 or SECNAVINST 1420.1B applies, plaintiff's requests are time-barred. Plaintiff does not explain why he waited so long to bring these requests or why it would be in the interest of justice to waive the time limit. Thus, the Court will grant defendant's motion for summary judgment.

## II. The Assistant Secretary's decision to deny plaintiff's request for a Special Selection Board was in his discretion to make.

Plaintiff's request for a Special Special Board, submitted to the Secretary on December 23, 2016, was conditioned upon a favorable finding by a Special Board. Plaintiff stated:

> If the special board determines that [plaintiff] was otherwise qualified for the programs during the respective selection boards, then [plaintiff] further requests . . . that a special selection board . . . be convened to review his 2004 and 2005 non-selection to Colonel in the AR.

Suppl. AR 1; *see also* Am. Compl. at 23 (requesting that a Special Selection Board be convened "upon any favorable finding of the respective special board"); Pl.'s Mem. at 9–10. Because the Court finds that it was in the agency's discretion to deny plaintiff's request to convene a Special Board, his request for a Special Selection Board is moot.[6] Indeed, plaintiff does not advance any

---

[6] In addition to finding no basis to grant the request for a Special Selection Board without favorable action on the Special Board requests, the Assistant Secretary also found that the Special Selection Board request was untimely, and plaintiff had not demonstrated that the promotion selection boards had based their decisions on a material error, lack of material information, or acted in a manner contrary to law. Suppl. AR 533. The Court need not evaluate the Assistant Secretary's reasons for denying the Special Selection Board requests.

arguments in connection with the Assistant Secretary's denial to convene a Special Selection Board.

Thus, the Court finds that the Assistant Secretary's decision denying plaintiff's request for a Special Selection Board was reasonable and will grant summary judgment in defendant's favor.

## CONCLUSION

For the reasons stated above, the Court will grant defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment.

A separate order will issue.

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE: March 29, 2019